ALICE J. KLUCKEN *vs.* ALEXANDER A. LEVI.

Suffolk. November 12, 1935. — February 26, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence*, Physician and surgeon.

In an action of tort against a physician for his negligence in administering ether to the plaintiff, a verdict for the plaintiff was not warranted on evidence that the defendant, with the assistance of a nurse not employed by him, etherized the plaintiff during an operation and

that ether got into the plaintiff's eye, there being no evidence that the defendant did not possess the standard of skill which the law required him to possess or that he failed to use that skill in handling the ether and in directing the nurse.

TORT. Writ dated July 25, 1930.

The action was tried in the Superior Court before *Goldberg*, J. There was a verdict for the plaintiff in the sum of $1,350. The defendant alleged exceptions.

The case was submitted on briefs in November, 1935, to *Rugg*, C.J., *Crosby*, *Pierce*, *Donahue*, & *Qua*, JJ., and afterwards was submitted on briefs to all the Justices.

*J. N. Clark*, for the defendant.

*T. H. Mahony*, for the plaintiff.

PIERCE, J. This is an action of tort, tried to a jury, against a physician to recover damages for injuries alleged to have been sustained through his negligence. The declaration charged in general terms that during an operation upon the plaintiff the "defendant so negligently administered said ether that he caused the plaintiff severe injury to her great damage." The defendant's answer contained a general denial and a further answer "that the plaintiff's negligence caused the injury and damage in her declaration alleged." In response to the defendant's motion that the plaintiff specify "in what particular the defendant was negligent in the administration of ether as alleged" the plaintiff specified as follows: "The defendant administered ether or other anaesthetics to the plaintiff while she was being operated on for a throat ailment and administered said anaesthetic so negligently that the plaintiff's eyes were badly burned and otherwise injured, the membrane or covering surrounding her eyes being burned or destroyed and her vision seriously impaired." At the close of all the evidence material to the issues presented, the defendant duly presented a motion that on the pleadings, the evidence and the specifications the judge direct a verdict for the defendant. This motion was denied and the defendant duly excepted. At the close of the judge's charge, the defendant excepted to certain portions thereof relating to the question of damages.

There were present at the operation the plaintiff herself who gave no testimony as to what took place, the plaintiff's family physician who operated, a nurse provided by the hospital, and the defendant, employed by the plaintiff through her physician, Dr. Day, to anaesthetize her. There is nothing in the evidence printed in the record to show that the apparatus used by the defendant during the anaesthetization was or should have been furnished by him, or that there was anything wrong or improper about the equipment which was used by the defendant.

The plaintiff testified that the operation for a thyroid cyst was at the New England Hospital for Women on Saturday, April 12, 1930; that the defendant was the anaesthetist and that he was assisted by a nurse, Evelyn Sylvia, in the employ of the hospital; that after the operation, she realized that she could not open her eyes and when she left the hospital she could barely see anything. On Sunday she asked Dr. Day why she had such trouble in her right eye and understood from what he said that ether got into her eye. Some days after the operation Dr. Johns, called in by Dr. Day, treated her, and after she left the hospital continued treating her for approximately five weeks. It was about four weeks after she left the hospital before she returned to work. "She experienced very much pain with her eyes while in the hospital, which continued for two days and until Dr. Johns treated the eyes she had gnawing nervous headaches after the operation all the time that she was in the hospital and at intervals after she left the hospital. She had no similar headaches before the operation. In April, 1930, she was employed by B. F. Sturtevant Company at a weekly wage of $25.00. The records of the New England Hospital for Women state under date of April 14, 1930, that the plaintiff had 'conjunctivitis from ether in the right eye,' and under date of April 30, 1930, that she was still under treatment for conjunctivitis by Dr. Johns. There was evidence that this condition is known as denuded corneal epithelium. Dr. Day testified that she did not have a denuded corneal epithelium in the right eye prior to the operation."

The defendant, called as a witness by the plaintiff, testified, in substance, that he had been a physician for over seven years and had specialized in surgery and obstetrics for about five years; that a part of his specialized work was in the administration of ether; that he had administered ether probably over one thousand times in five years and had the skill of the ordinary practitioner in and around Boston accustomed to giving ether. The only testimony as to the qualifications of the nurse came from the nurse herself, who was called as a witness by the defendant. This testimony disclosed that she had been in charge of the operating room of the New England Hospital for Women for about seven and one half years, had had special training in the management of an operating room, and had assisted in giving ether approximately fifty times a month over a period of seven and one half years. It was in evidence that the defendant was assisted by the nurse, Miss Sylvia, and that in this case it was necessary that the defendant have such assistance.

The only testimony as to the actual administration of the ether came from the defendant and the nurse. The defendant testified that at the start the anaesthetic was administered through a Gwathmey machine (which was described); and that "this apparatus is used to bring the patient to the state of anaesthesia known as induction, and then to be carried into the stage known as moderately deep anaesthesia." In the instant case, after this apparatus had been used the defendant changed to a cone, because it was easier to handle the cone than to use the gas mask, and the defendant could keep the plaintiff sleeping in quiet at a certain level of sleep. The cone consisted of cardboard rolled into a cylinder, open at both ends, covered by a heavy towel and filled in the upper third with gauze. At one end the cardboard was cut so as to fit the face more closely. The purpose of the towel was to protect the face from the cutting edge of the cardboard and to absorb ether which might run out of the gauze. In using the cone ether was poured in by hand in liquid form from a metal container,

the amount of ether entering the cone being controlled by the person pouring it. Ether is a liquid substance which vaporizes readily at room or body temperature; vaporization starts when ether is poured on the gauze in the cone and vapor keeps coming off the gauze until the ether is dissolved. The defendant testified that the cone fitted to the plaintiff did not fit over the eyes at all and, if ether got into her eyes, it came from outside the cone; and that it could be determined by the person administering the ether whether the ether was leaking from the bottom of the cone or dropping down from outside the cone. The plaintiff then asked the defendant the questions, and received the answers, which follow: "Q. If any ether got into her eyes it came from outside the cone or leaked from the bottom of the cone into her eyes? A. If it got into her eyes it would have to come from an outside source, yes. — Q. And if that were done by the ordinary anaesthetist you would say that that was improper, wouldn't you, if it got into her eyes in that way? A. To my mind, I wouldn't say it was improper. — Q. But you wouldn't expect the ordinary anaesthetist to permit it to get into the eyes of the patient under those circumstances, would you? A. I wouldn't, no."

The defendant then testified that in this particular case the plaintiff was draped with towels and had a sterile sheet covering her so that it came over the shoulder of the defendant who stood behind her. Her face was covered with towels, with two towels over her eyes. The defendant "determined in part the amount of anaesthesia by observing the size of the pupils of the patient's eyes." (For this purpose it is obvious the towels would have to be lifted.) He held her chin with his left hand and the ether cone with his right hand. He would remove the ether cone from her face with his right hand and hold it upside down. The nurse would pour ether in liquid form from the can into the cone until he said "That's enough." He would then hold the cone in his hand until full evaporation had taken place and then would replace the cone upon the plaintiff's face. The amount poured into the cone was controlled by

the defendant.  He further testified that it would take a considerable amount of ether to saturate the bandages upon the plaintiff's face; that if complete vaporization had taken place within the cone no liquid ether would remain and get into a patient's eyes; that if the mask apparatus were properly placed and if ether were properly handled, no ether fumes or liquid would get into the eyes of a patient; that if fumes or liquid did get into the patient's eyes it would not indicate that the apparatus was not properly handled or that too much ether had been used; that if the apparatus were properly handled ether would not get into the patient's eyes from outside the mask unless somebody came along and poured ether outside the mask; and that he alone handled the apparatus and he did not see how ether fumes or liquid got into the plaintiff's eyes while he was administering it.  He would not expect it to happen with the use of the mask and with the protection used during the administration of the ether.  In cross-examination he testified that "There was no way in which one could absolutely prevent ether vaporization from reaching the eyes of the patient and with the use of the towels there would be no escape of [liquid] ether."  He testified that he used extraordinary precautions in this case and had to have assistance.

The nurse testified that the defendant told her when to begin and when to stop pouring ether into the cone and that there was no departure by the defendant from the usual technique in handling the gas anaesthetic.

The above, in substance, is all the evidence in the case. There is no evidence that the defendant did not possess the standard of skill which the law required him to possess and there is no testimony in the record, lay or expert, that there was any "departure by the defendant from the usual technique in handling the gas oxygen anaesthesia." See *Gabrunas* v. *Miniter*, 289 Mass. 20, 22.  The fact, warranted by the evidence, that the plaintiff suffered injurious effects to her eyes by the administration of ether by the defendant would not alone warrant the further

inference of fault on the part of the defendant in adminis-
tering the ether. In the absence of expert affirmative
evidence of fault in the administration of ether to the
plaintiff the basic question is whether the defendant in
administering the ether properly could be found to have
failed to use the care and skill which the law required.

There is no evidence to show that the mask or cone was
defective or inadequate or that the defendant should have
insisted upon additional apparatus or equipment. There is
no direct evidence to show a causal relation between the
acts connected with the administration of the ether and the
injury to the plaintiff's eyes, or that the defendant's con-
duct was negligent. There is nothing in the record to ex-
clude the reasonable inference that the nurse in pouring the
liquid ether spilled ether upon the outside of the cone
which found its way to the plaintiff's eyes to their harm.
If such were the fact the defendant was not chargeable
because the nurse was furnished by the hospital and there
is no evidence that the defendant directed or failed to
direct her other than to say that the liquid ether she
poured into the cone was "enough." There is nothing to
warrant a finding that the ether in vapor form got into the
plaintiff's eyes through the defendant's administering of
ether.

It is not necessary to consider the requests for rulings
or the exceptions to the judge's charge because a majority
of the court think the motion for a directed verdict should
have been allowed and a verdict ordered for the defendant.

*Exceptions sustained.*
*Judgment for the defendant.*