JOSEPH BORYSEWICZ *vs.* IRVING P. DINEEN.

Hampden.    January 9, 1939. — March 1, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Negligence,* Dentist.    *Evidence,* Presumptions and burden of proof.

A finding of negligence of a dentist in treatment of a patient following extraction of a tooth which broke in the process of extraction, after which the patient had great trouble with his jaw culminating in osteomyelitis, was not warranted in the absence of medical evidence showing that such trouble and disease were due to acts or omissions of the dentist.

TORT. Writ in the Superior Court dated March 9, 1934.

The case was tried before *Broadhurst,* J., and in this court was submitted on briefs.

*N. M. Harvey & J. H. Mulcare,* for the plaintiff.

*G. D. Cummings & J. M. Carroll,* for the defendant.

COX, J. This action of tort to recover for injuries sustained by the plaintiff and alleged to have been caused by the negligence of the defendant, a dentist practising in the city of Springfield, was tried to a jury. After a verdict for the plaintiff, the judge, upon leave reserved (G. L. [Ter. Ed.] c. 231, § 120), and upon the defendant's motion,

ordered that a verdict be entered for the defendant. The plaintiff's only exception is to the allowance of this motion.

The evidence, in its aspect most favorable to the plaintiff, discloses that on June 7 or 8, 1933, the defendant, after administering gas to the plaintiff, extracted an aching tooth from the right side of his jaw; and that during the operation the tooth fractured, both roots remaining in the jaw. The tooth had given the plaintiff trouble "only late in the afternoon before" while he was at work. At the close of the evidence the plaintiff conceded that the sole question for the jury to consider was whether there was negligence on the part of the defendant in the treatment of the plaintiff after the tooth had broken, "beginning at the moment when it broke," and that there was no evidence of negligence in the breaking of the tooth or in its extraction before the break occurred. When the plaintiff recovered from the anesthetic, he expectorated but saw no blood. He "could feel a hole in his gum where the tooth had been." He asked to see the tooth but was told by the defendant that it had been thrown in the basket and could not be found. The defendant "was a little nervous and white" and made a mistake in changing the bill which the plaintiff tendered in payment. In correcting the mistake the defendant "who looked like a man scared," took back the excess change which he had given "with a shaking hand." The plaintiff was unable to sleep that night because of the pain in his tooth, and returned to the defendant the next day. The defendant, after looking in the plaintiff's mouth and feeling of the gums, said that he could not do anything that day and told him to "come next week." The plaintiff did not return to the defendant but on the fourth day following the extraction he called a surgeon. At that time the plaintiff had a swollen jaw on the right side and "some muco-purulent discharge from the inside and was having pain. Plaintiff could not open up his jaw but one fourth of its normal." The plaintiff received treatment for a few days and on June 17 and July 7, his jaw was opened and drained, and two molar teeth on the same side of the jaw were extracted. The

surgeon's preliminary diagnosis indicated "infection of the jaw — periostitis — an inflammation of the covering membrane of the jaw . . . probable osteomyelitis," which is an infection that has extended into the bone. The surgeon treated the plaintiff until April, 1934. Pus was continually draining from the jaw and the swelling continued. In April, 1934, the surgeon enlarged the opening and removed a portion of the bone that was diseased and had separated from the healthy bone, as the result of osteomyelitis. The plaintiff was under treatment until November, 1935. After the first operation by the surgeon, and during his vacation, the plaintiff was operated on by a dentist who is now dead. After this operation the plaintiff "felt different and had no pain in his jaw." On August 1, 1933, the plaintiff asked this dentist what he had done and the plaintiff testified that the dentist replied, "I pulled the roots. All right now."

The only medical testimony offered by the plaintiff was that of the surgeon who attended him. He testified that he did not think a broken tooth caused osteomyelitis, but that the cause was infection from some other source; that osteomyelitis is very often a "blood borne infection . . . That it is carried by the blood stream, and locates in the marrow or some of the terminal blood vessels inside the bone structure."

The defendant testified that he did not remove the roots at the time of the extraction or on the following day because the plaintiff's condition under the anesthesia was poor; that he had "cyanosis, which is a bluish color, a danger signal; also his breathing was quite irregular."

There was no medical testimony that anything that the defendant did, or did not do, was the cause of osteomyelitis, or of the physical condition of the plaintiff after the extraction.

We do not think there was any error. In an action for malpractice, the standard of care by which the negligence of the defendant is determined is the skill and care that persons in the same profession as the defendant ordinarily have and use in similar circumstances. "The facts in a

BORYSEWICZ *v.* DINEEN.

case of alleged malpractice may be such that jurymen out of their common knowledge and experience are able, without the aid of expert medical testimony, to say what skill and care members of the same profession as the defendant ordinarily have and use in like circumstances, and to apply that standard to the skill and care found to have been possessed and used by the defendant. *Gabrunas* v. *Miniter,* 289 Mass. 20, 22. In many cases, in the absence of medical testimony, the jury unaided by medical testimony are unable to do this." *Tallon* v. *Spellman, ante,* 179, 183, and cases cited. The fact that the plaintiff suffered after treatment by the defendant does not establish negligence on the defendant's part. *King* v. *Belmore,* 248 Mass. 108, 114. *Sheehan* v. *Strong,* 257 Mass. 525, 529. *Klucken* v. *Levi,* 293 Mass. 545, 550. The expert testimony in behalf of the defendant, which tended to show that the treatment rendered by the defendant was proper, could have been disbelieved by the jury, but this would not aid the plaintiff in his obligation of establishing by affirmative evidence that the defendant was negligent. *Goode* v. *Lothrop,* 266 Mass. 518, 520.

We do not think that the facts that could have been found in the case at bar are such that a jury, unassisted by expert testimony, could find that the defendant was negligent. The cases of *Toy* v. *Mackintosh,* 222 Mass. 430, *Ernen* v. *Crofwell,* 272 Mass. 172, *Gabrunas* v. *Miniter,* 289 Mass. 20, upon which the plaintiff relies, are distinguishable.

*Exceptions overruled.*