ANTONETTA DiROBERTO & another *vs.* MARIE R. LAGASSE,
administratrix.

Worcester. September 23, 1957. — November 6, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Negligence,* Invited person, Carnival booth, Res ipsa loquitur.

The fact that one present as an invitee on premises where a carnival was
being held had stood at a booth watching a game being played but
not participating therein for an hour before a pipe supporting the
awning of the booth fell and injured her did not require a ruling as
matter of law that she had lost her status as an invitee at the time of
her injury. [310–311]

An unexplained fall of an iron pipe supporting the awning of a carnival
booth furnished and erected by one having exclusive control of the
maintenance of the booth and its equipment would warrant, under
the doctrine of res ipsa loquitur, a finding of negligence on his part
toward an invitee of the carnival who was struck and injured by the
falling pipe while standing under the awning. [311–312]

TORT. Writ in the Superior Court dated March 9, 1949.
The action was tried before *Meagher,* J.

*Thomas S. Carey,* for the plaintiffs.

*Berge C. Tashjian,* for the defendant.

RONAN, J.   These are exceptions of the plaintiffs to the entering of verdicts for the defendant under leave reserved after the jury had returned verdicts for the plaintiffs, who are husband and wife.   The female plaintiff (hereinafter called the plaintiff) was injured while standing under the awning projecting over the front of one of the booths at a church carnival when an iron pipe supporting the awning fell striking her on the head.   The husband seeks consequential damages.

The wooden framework of the booth was assembled and put together on the ground and was then covered with canvas, which extended over the two sides and the front and was attached to an iron framework which could be adjusted to raise or lower the canvas so as to open or close the awning.   This booth was erected on the Sunday preceding the Wednesday on which the accident occurred.   The booth was erected by an employee of the defendant's intestate (hereinafter called the defendant) who had then been employed by the defendant for more than eleven years in erecting and removing similar booths.   He testified that if the pipes "were properly in place and the tent properly put up . . . it wouldn't collapse."   The defendant's manager was present while the carnival was open.   An employee of the defendant had charge of opening and closing the booths each day and had charge of seeing "that everything about the tents was in order and in safe condition for the convenience of those attending the carnival, daily and nightly, twice a day."   It could be found that this work necessitated the opening and closing of the awning of the booth in question.

It could not be ruled as matter of law that the plaintiff had lost her status as an invitee by standing for an hour at this booth without participating in the game.   She and her sister were watching the operation of a money wheel.   The sister had in fact played the game.   They were in nobody's way.   Their presence was not a detriment to the business.

Indeed it might have been a benefit. The appearance that a booth was being well patronized was more consistent with the success of the carnival than if the booth was not attracting customers. Anyway, the accident occurred before closing time. The invitation extended to the plaintiff had not been withdrawn. The case is distinguishable from *Heinlein* v. *Boston & Providence Railroad,* 147 Mass. 136, where prior to the accident the invitation had been withdrawn and the relation of a passenger had terminated. The accident occurred after ten o'clock and there was evidence that a free act was to go on upon the carnival grounds at eleven o'clock that evening. The performance of the act could be found to be an inducement by the defendant to witness it.

There was evidence that there was no one on or about the roof of this booth at the time of the accident. The front awning was eight feet above the ground and out of reach of a person on the ground. The jury apparently did not believe that there was considerable rain prior to the accident and a great number of persons ran under the awnings for shelter, or that there was a high wind, and they could, as they apparently did, credit the testimony tending in a different direction and find there was little or no rain and that this booth was not crowded with persons seeking shelter, and adopt the testimony of the weather observer that the rate of the wind was only two miles an hour. That left the cause unexplained.

The jury could also find that the booths and equipment were furnished, owned and maintained by the defendant. The booth in question contained no merchandise but only a money wheel which was owned and kept in repair by the defendant. The wheel was operated by two members of the parish for the benefit of which the carnival was held. Other than operating the wheel they had nothing to do with the maintenance of the booth or the equipment, which could be found to remain in the exclusive possession of the defendant.

The plaintiff was not required to exclude all causes except the defendant's negligence and it was sufficient if upon

the entire evidence there was a greater likelihood that the accident was due to his negligence rather than to some other cause. *Weiss* v. *Republic Pipe & Supply Corp.* 335 Mass. 422, 427–428. The collapse of the awning in the attending circumstances leads to a rational inference that it was due to the negligence of the defendant. *Cleary* v. *Cavanaugh,* 219 Mass. 281. *Navien* v. *Cohen,* 268 Mass. 427, 431. *Cushing* v. *Jolles,* 292 Mass. 72, 74. *Duggan's Case,* 315 Mass. 355, 359. *Hennigan* v. *Nantasket Boat Line, Inc.* 329 Mass. 690. *Iandoli* v. *Donnelly,* 332 Mass. 601. *Couris* v. *Casco Amusement Corp.* 333 Mass. 740.

The exceptions are sustained and judgments are to be entered on the verdicts returned by the jury.

*So ordered.*