BARBARA A. BARRETTE *vs.* DONALD M. HIGHT.

Worcester.   October 6, 1967. — November 8, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence,* Doctor.  *Practice, Civil,* Charge to jury.  *Doctor.*

At the trial of an action for malpractice against a doctor, where the
    plaintiff testified that after the alleged negligent treatment the de-
    fendant said to her that "he would take the responsibility for what
    happened and pay the bills," but the doctor testified that no such con-
    versation occurred, and the judge in his charge specifically stated that
    the determination of facts was for the jury "alone," there was no con-
    travention of G. L. c. 231, § 81, or impropriety, in a portion of the charge
    that "if you [the jury] think that the plaintiff made up this story, that
    is, if you believe the doctor's testimony that no such conversation oc-
    curred, then you can . . . [weigh] all of the plaintiff's testimony in
    the light of that conduct."  [270–271]
At the trial of an action against a doctor for an alleged negligent opera-
    tion, where the testimony of the plaintiff and of the defendant con-
    flicted as to whether the defendant "participated in . . . the actual"
    operation and the judge correctly summarized the testimony on that
    issue of a resident in surgery at the hospital, a portion of the judge's
    charge to the jury, that the resident's testimony "also should help . . .
    in your consideration of whether the plaintiff . . . or the defendant
    was telling the truth" concerning the defendant's participation, prop-
    erly left that issue to the jury.  [271]
At the trial of an action for malpractice, in which the judge expressly
    gave instructions requested by the plaintiff as to the defendant's pos-
    sible liability as a medical specialist for negligence in examining,
    diagnosing and directing the treatment of the plaintiff, no error was
    shown in the judge's failure to specify with more particularity phases
    of the defendant's activities which might have been negligently per-
    formed.  [272]
At the trial of an action against the chief of surgery at a hospital, who
    was engaged to do an ulcer operation on the plaintiff, for alleged negli-
    gence in directing a resident in surgery at the hospital to perform a
    preliminary "cutdown" on the plaintiff's upper arm, in which one
    nerve was cut and another injured, there was no error in a portion of
    the judge's charge that the defendant could not be "held responsible
    for the negligence or lack of skill" of the resident, "even though . . .
    [he was] somewhat under . . . [the defendant's] direction or con-
    trol," if "it was good practice in" the city in which the "cutdown"
    was performed and at that time "to permit house doctors to do cut-
    downs" and if the defendant "honestly believed" that the resident
    "had the skill to do the work."  [272–273]

A certificate of limited registration issued to a resident in surgery at a certain hospital under G. L. c. 112, § 9, as amended through St. 1962, c. 578, entitled him to practise in that hospital without being "under supervision of one of its medical officers." [273–274]

Any inaccuracy in a statement in the charge at the trial of an action for malpractice, that "If causes other than the [defendant's] negligence . . . might have produced the harmful consequences, the plaintiff is required to exclude all such other causes by the fair preponderance of the evidence," was immaterial where the cause of injury was treated as known and the real issue was whether the defendant was responsible for that cause. [274–275]

At the trial of an action against the chief of surgery at a hospital for alleged negligence in directing a resident in surgery there to perform a "cutdown" on the plaintiff's upper arm, in which one nerve was cut and another injured, where expert medical testimony that it was preferable and safer to do a "cutdown" on the forearm did not establish that it was bad medical practice or outside permissible medical judgment to do a "cutdown" on the upper arm and the record did not show what considerations led the defendant to direct that the "cutdown" be made there, there was no error in the judge's refusal to instruct the jury that the choice by the defendant of a method of "cutdown" less safe than another well known method could constitute negligence, or in the judge's instruction that if the defendant used "his best judgment" in selecting the method employed he could not be held responsible for any resulting injury. [276–277]

Tort. Writ in the Superior Court dated March 9, 1964. The action was tried before *Collins*, J.

*Meyer H. Goldman* for the plaintiff.

*John F. Dunn* for the defendant.

Cutter, J. In this action of tort Mrs. Barrette alleges that Dr. Hight gave her negligent medical treatment.[1] The jury found for Dr. Hight. The case is before us on Mrs. Barrette's bill of exceptions.

Mrs. Barrette was admitted on June 30, 1963, to the Memorial Hospital in Worcester for an ulcer operation to be performed by Dr. Hight, chief of surgery at the hospital. Dr. Delbeau, a resident in surgery, examined her. On July 1, she was seen by Dr. Sahni, and on July 2 Dr. Hight and Dr. Beals saw her. Dr. Hight instructed Dr. Delbeau to do a

---

[1] Originally there were five defendants. Counts against two doctors were waived. Settlement of the counts against two defendants, Dr. Sahni and Dr. Delbeau, was made during the trial. The settlement agreements were brought to the attention of the jury. They were instructed that, if they found for Mrs. Barrette in the case against Dr. Hight, they must deduct the amount of the settlements from the damages found by them.

"cutdown" on Mrs. Barrette, that is, a cut in her arm on July 3 prior to the operation so that a needle could be inserted in a vein for intravenous feeding, blood transfusion, or anesthesia.

There was conflicting evidence concerning whether Dr. Hight was in the operating room at the commencement of the cutdown and to what extent he participated in it. It was started in the outside left upper arm and, when that proved not to be satisfactory, a cut was made in the inner part of the upper left arm. In the course of the cutdown the lateral nerve of the arm was severed and the median nerve was damaged. Eventually a cutdown was made in the ankle. Mrs. Barrette, as a consequence, suffered pain, incurred hospital and medical expense, and was incapacitated for work as a typist. Other relevant evidence is discussed in connection with particular exceptions.

1. Mrs. Barrette testified (a) that, in late August, 1963, after the operation, she spoke to a doctor in the hospital's outpatient department about her condition; (b) that after this talk she called Dr. Hight; and (c) that "Dr. Hight said . . . he would take the responsibility for what happened and pay the bills." Dr. Hight, on the other hand, testified that he "did not assume responsibility for Dr. Delbeau's conduct in the cut-downs," and that "[h]e received no call from Mrs. Barrette, and . . . did not tell her . . . he was responsible and . . . [would] take care of all the bills."

The judge, after referring to this conflict of testimony, charged, "Now, here is a flat conflict in the testimony . . . on a material aspect of the case, because if the plaintiff was telling the truth here, if in fact the doctor made an admission of responsibility or a promise to pay bills, it would be evidence of an admission of liability on his part, evidence that he had been negligent. On the other hand, if you think that the plaintiff made up this story, that is, if you believe the doctor's testimony that no such conversation occurred, then you can . . . [weigh] all of the plaintiff's testimony in the light of that conduct. You can consider the proba-

bility of whether such a conversation ever took place."
Mrs. Barrette's counsel claimed an exception "to the general comment . . . and especially the words 'if the plaintiff made up this story.' "[2]

A trial judge may properly bring to the jury's attention issues of fact and conflicts of testimony. He may point out factors to be considered in weighing particular testimony. Nothing in G. L. c. 231, § 81, precludes, or could properly preclude, such guidance where the judge clearly places the function of ultimate appraisal of the testimony upon the jury. See *Beers* v. *O'Brien,* 316 Mass. 532, 536–537; *Hathaway* v. *Checker Taxi Co.* 321 Mass. 406, 410. See also *Cahalane* v. *Poust,* 333 Mass. 689, 691–695. This charge shows no improper expression of the judge's own evaluation of the testimony. *Commonwealth* v. *McDonald,* 264 Mass. 324, 335–336. Cf. *Federal Natl. Bank* v. *O'Keefe,* 267 Mass. 75, 82–83; *Cahalane* v. *Poust,* 333 Mass. 689, 692–695; *Baglio* v. *New York Cent. R.R.,* 344 Mass. 14, 20. As the judge pointed out, if the jury did not believe the witness or regarded her testimony as either fabricated or distorted, their opinion to that effect might properly influence their appraisal of her other testimony.[3]

2. There was also a conflict in testimony between Mrs. Barrette and Dr. Hight concerning whether Dr. Hight "participated in . . . the actual cutting of . . . [Mrs. Barrette's] arm." The judge, in his charge, correctly summarized Dr. Delbeau's testimony on the subject. His charge that this testimony "also should help . . . in your consideration of whether the plaintiff . . . or the defendant was telling the truth" concerning Dr. Hight's participation properly left any finding on the issue to the jury.

---

[2] The judge immediately before discussing this phase of the case had told the jury that he was "not permitted to tell . . . what I believe as to the credibility of any . . . testimony. Nothing that I say should be interpreted as an indirect revelation of how I feel on that or any other factual issue in this case. The determination of the facts . . . is yours alone."

[3] Because of the possible significance of an alleged admission of fault in malpractice cases (see e.g. *Manzoni* v. *Hamlin,* 348 Mass. 770) the jury obviously should consider carefully whether, in particular circumstances, testimony concerning such an alleged admission deserves credence.

Cf. *Liakos* v. *Moreno,* 351 Mass. 90, 94. The exception to this portion of the charge, in any event, was far too general. *Mansell* v. *Larsen,* 311 Mass. 607, 613–614.

3. The judge expressly gave, as a supplementary charge, instructions requested in behalf of Mrs. Barrette that "as a specialist" Dr. Hight owed Mrs. Barrette "the duty to . . . use the care and skill commonly possessed and used by similar specialists in like circumstances," that the jury might infer that, among Dr. Delbeau's duties, "was the administering by him . . . of such treatment as" Dr. Hight might direct, and that "the extent" of Dr. Hight's "possible liability" would be for negligence in examining Mrs. Barrette, in his diagnosis, and "in the direction for treatment given to the house officer." He was not obliged to specify, as requested, with more particularity phases of Dr. Hight's activities which might have been negligently performed. *Commonwealth* v. *Polian,* 288 Mass. 494, 499. *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 496.

4. The trial judge charged that "Dr. Hight cannot be held responsible for the negligence or lack of skill of other doctors in this case, if there was negligence of such others, even though you find that they were somewhat under his direction or control. For example, if you find that the actual scalpel work on . . . [Mrs. Barrette's] arm was done by Dr. Delbeau, and that he cut one nerve and injured another because of any lack of skill or negligence on his part, those facts alone would not make Dr. Hight liable, if you find it was good practice in Worcester in July, 1963, to permit house doctors to do cutdowns, and if Dr. Hight honestly believed that Dr. Delbeau had the skill to do the work." This charge is consistent with our decisions. See *Withington* v. *Jennings,* 253 Mass. 484, 486; *Klucken* v. *Levi,* 293 Mass. 545, 550–551; *Ramsland* v. *Shaw,* 341 Mass. 56, 63.

There was no evidence that it was contrary to good medical practice in Worcester to permit hospital "resident" physicians (such as Dr. Delbeau) to do cutdowns, whatever may be the practice with respect to internes. The judge's

supplemental instructions adequately reflected anything here applicable said in *Tallon* v. *Spellman,* 302 Mass. 179, 182.

5. Dr. Delbeau was a resident in surgery at the Memorial Hospital. He practised medicine there in 1963 under a certificate of limited registration issued to him under G. L. c. 112, § 9 (as amended through St. 1962, c. 578).[4] The judge correctly ruled that this certificate permitted Dr. Delbeau to practise within the Memorial Hospital without being "under supervision of one of its medical officers." These words of the statute, the judge held to apply only to Dr. Delbeau's practice of medicine outside the hospital. The judge adopted what seems to us the natural interpretation of the words used. That interpretation is supported by the statutory history of § 9. The section had its origin in St. 1920, c. 244, when the scope of permissible practice of the registrant was described by the words, "but such limited registration shall entitle the . . . applicant to practice medicine only in the hospital . . . designated on his certificate of limited registration, and under the regulations established by such hospital . . . ." By St. 1933, c. 152, the limitation was changed by adding new language permitting supervised practice of hospital patients outside the hospital. We perceive in the new language no indication that the registrant's right to practice within the hospital was to be changed by the amendment. Exceptions based,

---

[4] Section 9, as amended, reads, "An applicant for limited registration . . . who shall furnish the board [of registration in medicine; see c. 112, § 2, as amended through St. 1960, c. 367; see later amendment by St. 1966, c. 299] with satisfactory proof that he is twenty-one or over and of good moral character, that he has creditably completed two years of a premedical course of study . . . and not less than three and one half years of study in a legally chartered medical school . . . and that he has been appointed an interne, fellow or medical officer in a hospital . . . which is incorporated under the laws of the commonwealth . . . may . . . be registered by the board as an interne, fellow or medical officer for such time as it may subscribe; but such limited registration shall entitle the . . . applicant to practice medicine only in the hospital . . . designated on his certificate of limited registration, *or outside such hospital, . . . for the treatment, under supervision of one of its medical officers who is a duly registered physician, of persons accepted by it as patients* . . . and in any case under regulations established by such hospital . . . . The name of any hospital . . . so approved shall also be indicated on such certificate. Limited registration under this section may be revoked at any time by the board" (emphasis supplied).

in whole or in part, upon the judge's interpretation of the statute are without merit.

6. We do not reach a question argued by Mrs. Barrette, viz. that the trial judge (see for our decisions, e.g. *Riggs* v. *Christie,* 342 Mass. 402, 405–406) unduly restricted the standard of Dr. Hight's conduct to the community of Worcester. The testimony about standards for making or directing cutdowns did not differentiate significantly between practices in Worcester and practices elsewhere.[5]

7. Mrs. Barrette claimed an exception to the italicized sentence of the portion of the charge set out in the margin.[6] This language was used in *Morris* v. *Weene,* 258 Mass. 178, 180. The trial judge treated the italicized language as essentially the same as, or equivalent to, that used in the last sentence of the quoted portion of the charge (fn. 6), usually now employed to describe a plaintiff's burden of proof where an injury may have been caused by one or more of several alleged causes, including an act or omission of a defendant said to be negligent. See e.g. *Woronka* v. *Sewall,* 320 Mass. 362, 365; *Howard* v. *Lowell Coca-Cola Bottling Co.* 322 Mass. 456, 458; *DiRoberto* v. *Lagasse,* 336 Mass. 309, 311–312.

If there was inaccuracy in the italicized language, that seems immaterial in the present case. None of the defendant doctors (fn. 1) could have been liable unless the cutdown caused Mrs. Barrette's injury. Dr. Hight himself testified that "the severed lateral nerve and the damaged median

---

[5] In addition to the supplementary charge referred to in part 3 of this opinion, the judge had already charged, "If the practitioner is a specialist, he is required to possess that knowledge and to exercise the skill which ordinarily is possessed and exercised by others who engage in the pursuit of the specialty within the profession, having regard always to the then state of knowledge in the community in which the specialty is being practiced."

[6] This portion of the charge read, in part, "*If causes other than the* [*defendant's*] *negligence . . . might have produced the harmful consequences, the plaintiff is required to exclude all such other causes by the fair preponderance of the evidence.* The plaintiff has failed to sustain the burden of proof if on the whole evidence the question of the defendant's negligence is left to conjecture . . . . Stated in another way, the plaintiff has the burden of proving . . . that there was greater . . . probability that the consequences which followed the treatment were caused by the defendant rather than proceeding from any other cause" (emphasis supplied).

nerve were caused by the cutdowns." The cause of injury thus was treated as known. The real issue was whether Dr. Hight was responsible for that asserted cause, either (a) because he himself did the cutdown or participated in it, or (b) because he had been shown to be negligent, and acting outside a reasonable medical judgment and discretion, in directing that it be made in the upper arm. The italicized language (fn. 6) had no reasonable bearing upon the jury's determination of these issues.

8. The trial judge referred to Dr. Hight's testimony that "he instructed Dr. Delbeau to do a cutdown on" Mrs. Barrette's upper arm and that "it is preferable to do . . . [a cutdown] in the lower arm." The judge then charged, "There is no evidence that such a choice would be contrary to good medical practice in Worcester in July, 1963. So if you believe Dr. Hight, and if it represented his best judgment [7] . . . then he could not be held responsible for any injury . . . in choosing to have the cutdown made in the upper arm." Mrs. Barrette claimed an exception to this language and to the judge's failure to give a requested instruction (No. 15), in effect, that the choice of a less safe method rather than another well known method may constitute negligence.

The judge was dealing with confused medical testimony from several doctors. Dr. Delbeau stated that the standard for this "particular procedure" was "the same in the Massachusetts General Hospital . . . and in the Memorial Hospital in Worcester." Dr. James C. White of the Massachusetts General Hospital testified that it "was not good medical practice to do a cutdown on the median side" of the arm and that it "is much safer to insert a needle for intravenous feeding in the forearm. However, if the physician is careful he can avoid injury to the median nerve when the cutdown is done in the inside of the upper left arm." He also said that "at the Massachusetts General Hospital . . . where

---

[7] The judge also correctly charged, essentially in the terms of *Riggs* v. *Christie*, 342 Mass. 402, 406, concerning the duty owed by a physician to his patient, including "that in all cases of doubt, he will use his best judgment as to the course to pursue in the treatment of . . . cases."

the cutdown is made . . . is left to the judgment of the doctor or the resident making the cutdown, having in mind the patient and all the attendant circumstances."

From the evidence the jury could conclude that Dr. Hight did direct that the cutdown be made in the upper arm. The evidence did not indicate that Dr. Hight made the selection of the inner or median side (as opposed to the outside) of the upper arm for the cutdown, unless the jury believed (as they do not seem to have done) the testimony of Mrs. Barrette that Dr. Hight himself did the cutdown.

The testimony that the forearm was preferable to the upper arm, and safer, for cutdowns did not go so far as to establish that it was bad medical practice, or beyond the limits of permissible medical judgment, to do a cutdown on the outer side of the upper arm. The expert evidence in the record, however, does not show what considerations [8] led Dr. Hight to direct that the cutdown be made somewhere in the upper arm rather than in the safer area of the lower arm. Dr. White's testimony suggests that such a choice may be within a reasonable range of medical judgment, taking into account the particular patient and circumstances.

Mrs. Barrette has not shown that Dr. Hight did not have adequate medical reasons for directing that the upper rather than the lower arm be used. She did not establish that order to be contrary to sound or acceptable medical practice. We think that the discretion as between the upper and lower arm was his to exercise, and that the jury's judgment could not be substituted for his after the event in the absence of expert testimony that his choice was outside reasonable limits of discretion and judgment (see fn. 7). The evidence concerning the comparative safety of the two places for cutdowns is less definite and more confusing than the choices discussed in *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 225–228 (where, as in *Berardi* v. *Menicks,*

[8] One passage in the judge's charge suggests that Mrs. Barrette was obese and thus likely to have brittle veins in her forearm. The record does not contain evidence to this effect. If the judge's statement was correct and if Dr. Hight or others so testified, that testimony has not been included in the bill of exceptions.

340 Mass. 396, 401, a dentist proceeded with a difficult matter which he might have referred to another dentist who had the proper experience and equipment to do the task), or in *Johnson* v. *Phillips*, 351 Mass. 712. The present evidence did not warrant the jury in concluding that the choice of place for the cutdown (unless he participated in the choice of the inner arm) was not within the scope of Dr. Hight's professional judgment and discretion. The judge was thus not required to instruct the jury in the language of the *Vigneault* case (at p. 227) in accordance with Mrs. Barrette's request (No. 15).

9. Other issues argued do not require discussion.

*Exceptions overruled.*