*Southern District*

## No. 65

# EVA ERLENBACH

v

# STEWART M. LEACH

Argued: January 28, 1975. Decided: August 4, 1975.

**See: Reporter's Note**

Case tried to *Sullivan, J.,* in the District Court of Northern Norfolk. No. _____.

Present: *Murphy, P.J., Lee, Tamkin, J.J.*

**Tamkin, J.** This is an action of tort for negligence to recover damages for personal injuries sustained as a result of the defendant's dental malpractice. The answer is a general denial.

The court found for the plaintiff in the sum of $8000 together with interest from the date of the writ.

We summarize the evidence as follows: The defendant testified that he was a dentist in the general practice of dentistry since 1947; that the plaintiff was a seventy-one (71) year old woman and that she was edentulous or toothless, with the exception of a partially impacted third molar—lower right, with the cusp protruding about 1/16" above the gum line, just breaking surface; that she consulted the defendant to have her dentures realigned; that he told her that he couldn't fix her dentures until the third molar was removed; that he took an X-ray which showed that it was a whole tooth that had grown sideways and had never broken the surface except for the cusp; and that he was not an oral surgeon but that he felt qualified to do the extraction. The defendant further testified that it is possible to break jaws during an extraction; that he was aware that older persons' jaws are more brittle; that the X-rays showed a thinning of the jaw bone consistently found in older people; that an endentulous person is more likely to have weakened jaws; and that he did not expect the jaw to break, but that he was aware of the possibility and that the possibility increased because of age. The defendant further testified that he used a lever and forceps and that the plaintiff's mandible (lower jaw) fractured during the extraction when he was using an elevator as a rotater; and that he was trying to release the tooth in the

socket and that it was more secure than most. He testified that an elevator is concave and when rolling it between the tooth and bone with some pressure applied posteriorly the mandible (lower jaw) broke; that he had previously extracted five hundred (500) third molars without a fracture; that he used the same approach in extracting this tooth as in extracting others like it; that this tooth was different in that it was the last remaining tooth and with all the other teeth gone, the risk of fracture was greater; that this tooth was more secure than most; that he was trying to loosen the tooth when the jaw broke; that he did not know what caused the fracture; that he agreed that Drs. Mathieson and Tower are expert oral surgeons and had written a book "Oral Surgery" in which they stated that it is sometimes better not to extract the impacted tooth of older persons because of the risk of fracture; that there are occasions on which he would decide against removal because of the risk of fracture and that he used his best judgment in deciding to remove this molar, and in his operative procedure including the amount of pressure used and the instruments used.

The defendant further testified that after the fracture, he took the plaintiff downstairs to the office of Dr. Pierce, an oral surgeon, for the purpose of having the fracture repaired; that there are two hospitals within a five mile radius of his office; that although he was on the staff of the Glover Memorial Hospital, he did not take the plaintiff to that hospital because they had no oral surgeon; that he furnished no treatment to the plaintiff for her broken jaw and only tried to stop the bleeding by pressure of gauze pads; that when he took the plaintiff to Dr. Pierce's office, Dr. Pierce was not there, but a trained nurse was there; that he left the plaintiff in Dr. Pierce's office at 3:30 P.M. and Dr. Pierce did not return until 6:00 P.M.; that the plaintiff bled from 3:30 P.M. until 6:00 P.M.; and that Dr. Pierce took the plaintiff to the hospital for further treatment.

The plaintiff testified that immediately after breaking her jaw, Dr. Leach said, "I have broken your jaw. I will have to get you to a hospital and an oral surgeon"; and that she then said, "What will it cost?" Dr. Leach replied, "There will be no problem; I am insured to cover all of this."

Mrs. Joe Wetmore Asher, the plaintiff's granddaughter, testified that Dr. Leach came into the waiting room after the plaintiff's jaw was broken and said, "There is some difficulty. I am taking further X-rays." Mrs. Asher asked, "What's the trouble." Dr. Leach replied, "I am sorry, I have fractured her jaw while I was splitting the tooth. I am taking X-rays to see." Approximately twenty minutes later, Dr. Leach came back and said, "I am sorry, her jaw is broken. I am trying to reach an oral surgeon to see her. I am covered for the bills involved here."

Mrs Madeline Wetmore, the plaintiff's daughter, testified that she received a phone call from Dr. Leach at about 4:30 P.M. and that he said, "We have some problems. Your mother's jaw is broken. I am sorry. It was an accident. I have called an oral surgeon. He is on the way. Don't worry about things. I will take care of everything."

At the close of testimony and before argument, the defendant filed the following requests for rulings:

1. In the absence of any express or implied promise, a dentist does not guarantee a cure or even an improvement in his patient's condition.

2. What the dentist does undertake and the full extent of his responsibility to his patient is to have and exercise the reasonable degree of learning, skill and experience ordinarily possessed by other dentists in his specialty, having regard to the current state of advance of the profession; and that in case of doubt, to use his best judgment as to the proper treatment to produce a good result *Brune v. Belinkoff*, 354 Mass. 102.

**3.** A dentist must be allowed a wide range in the reasonable exercise of his professional judgment. He is not guilty of malpractice so long as he employs such judgment and so long as that judgment does not represent a departure from the requirements of accepted dental practice, or does not result in failure to do something which accepted dental practice obligates him to do, or in doing something he should not do measured by the standards of the profession practicing in his specialty. *Borysawicz v. Dincen,* 302 Mass. 461, 463.

*Vartanian v. Berman,* 211 Mass. 249, 253.[1] (311 Mass. 249) *

*Bouffard v. Canby,* 292 Mass. 305, 309.

**4.** The defendant's duty to the plaintiff was to use the care and skill of the ordinary dentist practicing in his specialty.

**5.** If the court finds that the treatment which Dr. Leach gave the plaintiff was in accordance with accepted dental practice, the court must find for the defendant, Dr. Leach.

**6.** Dr. Leach's conduct must be tested not by standards of excellence or perfection, but by the standards of care and skill which prevailed in 1967 within the specialty that he practiced. *Ernen v. Crofwell,* 272 Mass. 172.

*Semerjian v. Stetson,* 284 Mass. 510.

*Bouffard v. Canby,* 292 Mass. 305.

**7.** The plaintiff has the burden of proving by the preponderance of the credible evidence not only that the defendant was negligent, but that she incurred damage as a direct and proximate result of this negligence, and unless the court finds both of these elements, the court must find for the defendant.

---

[1] Incorrect citation in report.

* Our insert.

**8.** The plaintiff has failed to maintain the burden of proof if, on the whole evidence, the question of the defendant's negligence is left to conjecture, surmise or speculation. *Bigwood v. Boston & Northern Street Railway,* 209 Mass. 345, 348.

*Morris v. Weene,* 258 Mass. 178, 180.

**9.** There is not evidence by testimony in the record, lay or expert, that the defendant did not possess the standard of skill which the law required him to possess. *Kluken v. Levi,* 293 Mass. 545.

**10.** Medical evidence to the effect that another dentist might undertake a different course of treatment from that of the defendant's is not evidence that the defendant's treatment is negligent unless the court finds that the defendant's treatment was not in accord with good dental practice in this specialty. *Bouffard v. Canby,* 192 Mass. 305.

**11.** The fact that the plaintiff suffered injurious effects during or after Dr. Leach's treatment does not even raise a presumption of negligence on the part of the defendant. *Kluken v. Levi,* 293 Mass. 545.
*Semerjian vs. Stetson,* 284 Mass. 510.

**12.** If on all the evidence it is just as reasonable to suppose that the cause of plaintiff's alleged injury is one for which no liability would attach to the defendant as one for which the defendant is liable, then the plaintiff fails to make out her case. *Morris v. Weene,* 258 Mass. 178.

*Wadsworth v. Boston Elevated Railway,* 182 Mass. 572, 574.

**13.** The personal opinion of a dentist or other professional dental personnel as to what is good dental practice is not a basis from which a court may draw a conclusion that practice not conforming to such an opinion is bad practice. *Bouffard v. Canby,* 292 Mass. 305.

**14.** The doctrine of *res ipsa loquitor* is not applicable where, as here, common knowledge or experience of men is not extensive enough to permit it to be said that the plaintiff's condition would not have occurred except for the negligence of the person charged. *Semerjian v. Stetson,* 284 Mass. 510.

**15.** Because of the possible significance of an alleged admission of fault in malpractice cases (see e.g., *Manzone v. Hamlin,* 348 Mass. 770) the court obviously should consider carefully whether, in particular circumstances, testimony concerning such an alleged admission deserves credence. *Barrette v. Hight,* 230 N.E. 2d 308.

**16.** If the court does not believe the witness who testifies as to an alleged admission of fault on the part of the defendant, or regarded that witness' testimony as either fabricated or distorted, his opinion as to that effect may properly influence his appraisal of the witness' other testimony. *Barrette v. Hight,* 230 N.E. 2d 308.

**17.** There is insufficient evidence as matter of law to support a finding for the plaintiff.

The court allowed all of the defendant's requests for rulings with the exception of requests ##5, 14 and 17, which were denied.

In respect to request #5 and #14, the court made written rulings as follows:

"#5 — If, in a malpractice case, the court finds that the treatment selected by the dentist, and the care he used in applying that treatment were in accord with practice accepted by the dental profession for that geographical area at that time, then the court must find for the dentist."

#14 — The doctrine of *res ipsa loquitor* is not applicable where common knowledge or experience of men is not extensive enough to permit it to be said

that the plaintiff's condition would not have occurred except for the negligence of the person charged."

The court made the following findings of fact:

"1. The plaintiff requested the defendant to align her dentures. She was toothless except for a partially impacted third molar which was neither diseased nor infected. She was 71 years old.

2. The defendant told the plaintiff that the tooth would have to come out to have her dentures sit tight. He wondered why it had not been extracted before.

3. Oral surgeons are available in the immediate area.

4. The plaintiff's jaw was fractured while the defendant was exerting pressure against it in the process of an extraction.

5. The defendant had extracted over 500 3rd molars without incurring a fractured jaw. He was using his normal procedures in this extraction. He used the same approach as he uses on other impacted molars. He found this one to be more secure than most.

6. The extraction of a molar entails some risk of a fractured jaw; this risk is increased in a patient of advanced years; this risk is further increased when the patient is otherwise toothless. This risk is further increased if the tooth has fused to the jaw bone. (The defendant was unable to ascertain whether or not this tooth had fused to the bone.) The defendant did not warn or advise the plaintiff of any risk of fracture.

7. The defendant used that degree of care required in the normal extraction of a molar, but he did not increase his degree of care commensurate with the increased risk present in this extraction."

The defendant claims to be aggrieved by the court's findings that "the defendant used that degree of care required in the normal extraction of a molar but did not increase his degree of care commensurate with the

risk present in this extraction," and by the court's denial of the defendant's requests for rulings of ##5, 14, and 17, and by the court's findings for the plaintiff.

We conclude that the trial court was in error in denying the defendant's request for ruling of law #5: "If the court finds that the treatment which Dr. Leach gave the plaintiff was in accordance with accepted dental practice, the court must find for the defendant, Dr. Leach" and was in error in its instruction as to the principle of law applicable this request by instructing itself: #5. "If, in a malpractice case, the court finds that the treatment selected by the dentist, and the care he used in applying that treatment were in accord with practice accepted by the dental profession for that geographical area at that time, then the court must find for the dentist."

■■ The duty of a trial court with respect to request for rulings of law that are presented to a court is succinctly set forth in *Home Savings Bank v. Savransky,* 307 Mass. 601, 603 (1940): "A trial judge sitting without a jury, must correctly instruct himself as to the governing principles of law and must pass upon pertinent requests for rulings of law presented to him for this purpose in such a way as to make plain that he has not fallen into error."

In *Adamaites v. Metropolitan Life Ins. Co.,* 295 Mass., 215, 219 (1936) the court said: "And upon proper requests therefore he, (the trial judge) must state the rules of law adopted by him for his guidance as a trier to fact in order that the right of review thereof may be preserved. See *John Hetherington & Sons, Ltd. v. William Firth Co.,* 210 Mass. 8, 18-19, (1911); *Castano v. Leone,* 278 Mass. 429, 431 (1932); *Memeshian v. Phipps,* 311 Mass. 521, 523 (1942); *Perry v. Hanover,* 314 Mass. 167, 173 (1943).

The basic issue raised by the denial of the request and the "instruction" given by the trial justice is whether the treatment given by the defendant was to

be judged by *accepted dental practice* or whether the tratment given by the defendant was in accord with practice accepted by the dental profession for that *geographical area* at that time.

The Massachusetts Supreme Judicial Court in *Brune v. Belinkoff*, 354 Mass. 102 (1968) abandoned the "community" or "locality" rule with which the present trial justice instructed himself. This rule was first enunciated in *Small v. Howard*, 128 Mass. 131, a case decided in 1880; and has been followed and applied in a long line of cases, a number of which involved dentists. See *Ernen v. Crofwell*, 272 Mass. 172, 175 (1930); *Vigneault v. Dr. Hewson Dental Co.*, 300 Mass. 223, 225 (1938); *Langis v. Danforet*, 308 Mass. 508 (1941); *Berardi v. Menicks*, 340 Mass. 396, 400 (1960).

In the *Brune* case, the court said: "We are of the opinion that the "locality" rule of *Small v. Howard*, which measures a physician's conduct by the standards of other doctors in similar communities, is unsuited to present day conditions. The time has come when the medical profession should no longer be Balkanized by the application of varying geographic standards in malpractice cases. Accordingly, *Small v. Howard* is hereby overruled . . . . "

The proper standard presently is whether the physician, if a general practitioner, has exercised the degree of care and skill of the average qualified practitioner, taking into account the advances in the profession. In applying this standard, it is permissible to consider the medical resources available to the physician as are circumstances in determining the skill and care required. Under this standard some allowance is made for the type of community in which the physician carries on his practice. See Prosser, Torts (3rd ed). §32 (pp. 166-167); compare Restatement 2d: Torts, §299a comment g." Also see *McCarthy v. Boston City Hospital*, 358 Mass. 639.

In view of the trial justice's "basic error" in instructing himself as to the governing principles of law in the case at bar, we do not find it necessary to treat the allegations of error in his finding and the denial of the defendant's requests for rulings #14 and #17.

Because of the denial of the defendant's correct request #5 and because the trial court's instructions permitted the justice to instruct himself as to defendant's conduct against a standard that has been determined to be incorrect, there was prejudicial error.

We hereby order the finding for the plaintiff vacated and order the case remanded for a new trial.