Commonwealth v. Valentine.

COMMONWEALTH vs. WILLIAM RAMON VALENTINE.

Hampden.   September 8, 1980. — September 24, 1980.

Present: ARMSTRONG, BROWN, & GREANEY, JJ.

*Identification.   Practice, Criminal,* Instructions to jury, Polygraphic test.

There was no merit to a defendant's contentions that a judge erred in
his instructions with respect to the various factors to be considered in
evaluating the reliability of identification testimony or that the charge
violated the provisions of G. L. c. 231, § 81. [546]

At a hearing on a motion for new trial of armed robbery indictments, at
which a witness who had previously entered guilty pleas to the rob-
beries testified that the defendant was not his confederate in the com-
mission of the crimes and stated that he would be willing to take a
polygraph examination in support of his testimony, the judge did not
abuse his discretion in denying the motion on the basis that he disbe-
lieved the testimony or in indicating that the results of a favorable
polygraph test, if the witness chose to take one, could be submitted
with a request for reconsideration of the denial. [546-547]

INDICTMENTS found and returned in the Superior Court
Department on May 16, 1979.

The cases were tried before *Cross, J.,* and a motion for a
new trial was heard by him.

*Stephen Levine* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the
Commonwealth.

GREANEY, J.   The defendant was convicted of the armed
robberies[1] of two employees of a restaurant in West Spring-
field.   The crimes, which occurred on the night of No-

---

[1] The defendant was charged on two indictments for armed robbery
while masked or disguised (G. L. c. 265, § 17), on the basis that he wore a
hooded sweatshirt.   The jury acquitted him of so much of the indictments
as alleged that he was "masked or disguised . . . [or had] his features
otherwise artificially distorted."

vember 12, 1978, were committed by two males carrying firearms, one of whom wore a hooded sweatshirt. The central issue at the defendant's trial was his identification by one of the victims. That victim testified that the incident had taken approximately twelve minutes, that she had one assailant in her field of vision for almost the entire period, that she observed for about ten minutes the portion of his face left uncovered by a hooded sweatshirt, that in the course of the police investigation she was shown on four occasions photographic arrays containing at least ten pictures each,[2] that in April, 1979, she selected the defendant's photograph from the last display, and that she identified him at that time as the robber in the hooded sweatshirt. A police detective testified that shortly after the incident this victim examined a book containing approximately 100 pictures (which did not contain the defendant's photograph) without making a selection and that on April 17, 1979, she identified two subjects from a fifteen photograph gallery, one of whom was the defendant. The employee who made the identification[3] was extensively cross-examined on her ability to observe the robbers and to make an accurate identification of the defendant, and with regard to discrepancies between the defendant's appearance at trial and her description of him given to the police. The judge charged the jury at length with respect to the various factors to be considered in evaluating the reliability of identification testimony. Those instructions contained several references to the Commonwealth's burden of establishing the accuracy of the defendant's identification as a participant in the crimes beyond a reasonable doubt and included, among other guidelines for evaluation of testimony of this sort, the following statement: "You may also take into account [that] the identification [which] is made by picking the defendant out of a group of similar individuals, say in a photograph, as

---

[2] The fairness of the displays has not been questioned.

[3] The other victim was unable to make any identification and did not testify at the trial.

generally more reliable than one which results in the presentation of the defendant alone to a witness." On appeal the defendant contends (1) that the foregoing instruction constitutes a charge on "matters of fact" in violation of G.L. c. 231, § 81,[4] and (2) that the judge erred in the denial of his motion for a new trial. There was no error.

1. The defendant's argument asserting a violation of G. L. c. 231, § 81, is frivolous. The judge's charge on the question of identification was based almost entirely on the model instructions recommended for the subject set forth in the appendix to the decision in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 308 (1979). The portion of the instructions to which the defendant objects is a virtually verbatim expression of the ninth paragraph of the exemplar.[5] *Id.* at 309. In all other respects the instructions pertaining to the identification testimony were consistent with the interpretation given to G. L. c. 231, § 81 (*Barrette* v. *Hight,* 353 Mass. 268, 271 [1967], and cases cited), and furnished the jury with impartial "guides . . . as to weighing the evidence of witnesses, and . . . tests by which their reliability or credibility may be determined." *Plummer* v. *Boston Elev. Ry.,* 198 Mass. 499, 514-515 (1908).

2. At the hearing on the motion for new trial, Eric Colon, who had previously entered pleas of guilty to the robberies, testified that one Angel Gonzalez, and not the defendant, was his confederate in the commission of the crimes. At the conclusion of his direct testimony, Colon stated that he would be willing to take a polygraph examination in support of his testimony. During argument on the merits of the motion, the judge indicated that he disbelieved Colon, that

---

[4] "The courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law." We assume that the provisions of this statute are applicable to criminal proceedings. See discussion on this point in *Commonwealth* v. *Ramey,* 368 Mass. 109, 113 n.4 (1975).

[5] "You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

he intended to deny the motion, and that the results of a favorable polygraph test, if the witness chose to take one, could be submitted with a request for reconsideration of the ruling. The judge orally stated that he was not "making [the] ruling contingent on the result[s] of the lie detector test." The motion was denied on the same day and bore the judge's written observation that he did not believe Colon's testimony, together with the additional statement that "the Court . . . does not set out any obligation for the witness to take a polygraph test; however, if further evidence along that line is introduced . . . such evidence may be considered on motion to reconsider the denial of this motion." The defendant, relying on the circumstances that prevailed in *Commonwealth* v. *Howard,* 367 Mass. 569 (1975), now argues that the judge's commentary on the offer of polygraph evidence indicated a willingness on his part to substitute the results of a polygraph examination for his own independent judgment and constituted an abdication of his responsibility to make the decision.

There is no meaningful comparison between this case and the events discussed in the *Howard* decision. Unlike that case, the matter of a polygraph was raised by defense counsel and not on the judge's own initiative. Nor did the judge ever unequivocally state (as was the situation in *Howard*) that the test results would totally control the outcome of the proceedings. In the present case, the judge made it abundantly clear, both orally and in writing, that his decision on the motion was predicated on his rejection of Colon's testimony and that his ruling was not contingent upon the receipt of polygraph evidence. There is ample support in the record for the judge's disbelief of the newly discovered evidence. We see nothing in the proceedings which "cast[s] a shadow on the judicial process" (*Howard* at 571), or which conveys an appearance of unfairness in the disposition of the request for a new trial.

The balance of the defendant's arguments do not otherwise reveal an abuse of discretion in the denial of the motion

and need not be separately discussed. See *Commonwealth v. Brown,* 378 Mass. 165, 172 (1979), and cases cited.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*