Moses Semerjian *vs.* Oscar F. Stetson, administrator.

Suffolk.    May 8, 1933. — December 1, 1933.

Present: Rugg, C.J., Pierce, Wait, Field, & Donahue, JJ.

*Negligence*, Of physician and surgeon, Res ipsa loquitur. *Proximate Cause. Evidence*, Presumptions and burden of proof, Inference, Admissions.

At the trial of an action against the administrator of the estate of a physician for personal injuries alleged to have been sustained by reason of negligence on the part of the physician in removing a chalazion from the under side of the upper eyelid of the plaintiff, there was no evidence as to the care and skill generally possessed and commonly used by physicians undertaking such an operation, as to the methods or materials generally employed by such physicians in performing similar operations, that the physician did not possess adequate skill to undertake and perform the operation or that the removal of the growth was not performed with the requisite skill and care. There was evidence that, after the physician had removed the growth and curetted, he put some drops of a liquid in the eye which caused a burning sensation and severe pain; that after subsequent treatments the plaintiff went to a hospital where his condition was diagnosed as a "Large ulcerative area, involving almost entire cornea" and "inside inflammation," of "Ulcerative keratitis"; and that subsequently he lost practically the whole sight of his eye. There was no evidence to show the source or constituent elements of the liquid put into the plaintiff's eye, the purposes for which it was commonly used, its ordinary effects and characteristics or that it was or was not in general use by doctors following or in connection with such operations upon eyelids, or as to the character or extent of injury which might cause an ulcer in an eye or as to the ordinary origin, characteristics and development of such ulcers or as to the causes which are commonly adequate to produce them. *Held*, that

(1) The burden was on the plaintiff to prove that the physician failed to fulfill his obligation to have and to use the skill and care which members of his profession commonly possess and exercise in corresponding circumstances;

(2) The mere fact that pain, inflammation and an ulcer in the plaintiff's eye followed the operation did not warrant an inference that they resulted from negligence on the part of the physician;

(3) The mere fact that such conditions followed the placing of an unidentified liquid in the plaintiff's eye did not warrant an inference that such use of the liquid was improper;

(4) The evidence did not warrant a finding or an inference of negligence on the physician's part.

The following facts, taken either singly or together, would not have warranted a finding that the physician had made admissions of negligence:

(1) That the physician had said that he could perform the operation alone, there being nothing in the evidence to indicate that in such an operation the presence of an assistant was necessary or that the absence of an assistant played any part in what happened;

(2) That the physician, apparently after administering the drops, asked the plaintiff if "caustic" had been put in the plaintiff's eye when similar operations had been performed in a hospital, to which the plaintiff replied that he did not know, there being no evidence that the physician had employed "caustic" or that its use in such an operation was improper or negligent;

(3) That two days after the operation, while the plaintiff was under the physician's treatment, he said to the physician that he had ruined his eye, his life and his business and that the physician said, "Don't you worry. Let me worry";

(4) That on the fifth day following the operation the physician stated to the plaintiff that he was waiting for a different medicine "from New York or some place"; that a companion of the plaintiff suggested that a specialist be seen; and that the physician said that he himself could not do any better than he had done, and gave the plaintiff a letter addressed to a doctor at a hospital where the plaintiff then went.

The common knowledge or experience of men not being extensive enough to permit it to be said that the plaintiff's condition would not have existed except for negligence of the physician, the doctrine, *res ipsa loquitur,* was not applicable at the trial above described.

The permissible drawing of an inference by a jury is a process of reasoning whereby, from facts admitted or established by the evidence, including expert testimony, or from common knowledge and experience, a reasonable conclusion may be drawn that a further fact is established. Per Donahue, J.

Tort for personal injuries. Writ dated April 3, 1929.

In the Superior Court, the action was tried before *Sisk,* J. Material evidence is described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*O. Storer,* (*J. J. Lucas* with him,) for the plaintiff.

*L. Powers,* for the defendant.

Donahue, J. This is an action for alleged negligence, originally brought against a physician and after his death defended by his administrator. The case is here on the plaintiff's exception to the direction of a verdict for the defendant by a judge of the Superior Court, when the defendant rested at the close of the plaintiff's evidence.

The doctor, on April 23, 1928, operated on the plaintiff and removed a hard growth, termed a chalazion, from the under side of the upper eyelid of the plaintiff's right eye. Prior to that time six similar growths had been removed from the plaintiff's eyelids by operations by other doctors, three of them being on the right eye and one from the upper lid of that eye. As to what was done by the doctor at the time of the operation the only testimony was that of the plaintiff which is here briefly summarized. The doctor rolled back the eyelid, held it with a clip, applied a local anaesthetic, cut out the growth and curetted. The operation up to this point caused some but not much pain. The doctor then put in the eye some drops of a liquid taken from a bottle. This at once caused a burning sensation and severe pains. The doctor started trembling, then "wipe[d] out" the eye, put in some other substance and gave the plaintiff something to take with him and use in the eye. On the four following days the doctor treated the plaintiff. The eye was inflamed, the pain persisted and the plaintiff went to a hospital. The entrance diagnosis was there made that the plaintiff was suffering from "Traumatic keratitis" which the record defines as "inflammation of the cornea of the eye due to a wound or injury." Upon examination a "Large ulcerative area, involving almost entire cornea" and "inside inflammation" was found and the diagnosis made of "Ulcerative keratitis." The plaintiff testified that the sight of his right eye is practically lost. It is not contended by the plaintiff that there was any negligent act of the doctor in the operation except putting in the eye the drops of liquid which was followed by a burning sensation and pain.

The burden was on the plaintiff to establish a causal connection between negligence of the doctor and his injury; that is, to prove that an act or omission of the doctor caused the injury and also that such act or omission was negligent. Negligence of a doctor consists of his failure to conform to the standard of care which the law sets for members of his profession, that is the obligation to have and to use the skill and care which members of his profession commonly

possess and exercise under corresponding circumstances. *Chesley* v. *Durant*, 243 Mass. 180, 182. *Harriott* v. *Plimpton*, 166 Mass. 585. The plaintiff was not here aided in sustaining the burden of proving negligence of the doctor by any testimony as to the care and skill generally possessed and commonly used by doctors undertaking such an operation or as to the methods or materials generally employed by such doctors in performing similar operations. There is nothing in the record on which to base a finding that the defendant's intestate did not possess adequate skill to undertake and perform the operation or that the removal of the growth was not performed with the requisite skill and care.

Certain statements of the doctor, appearing in the plaintiff's testimony, in our opinion do not warrant the finding by the jury that they were admissions of negligence. *Goode* v. *Lothrop*, 266 Mass. 518. Just before the beginning of the operation after some discussion of the fact that he had no assistant present, the doctor said that he could perform it alone. There is nothing in the evidence to indicate that in such an operation the presence of an assistant is necessary or that the absence of an assistant played any part in what happened. The doctor, apparently after administering the drops, asked the plaintiff if "caustic" had been put in the plaintiff's eye when similar operations had been performed in a hospital to which the plaintiff replied that he did not know. This would not warrant the inference that the doctor had employed "caustic" or that its use in such an operation was improper or negligent. Two days after the operation while the plaintiff was under the doctor's treatment he said that the doctor had ruined his eye, his life and his business and the doctor said, "Don't you worry. Let me worry." Such a reply by a doctor to such an outburst from a suffering patient affords no basis for a finding that the doctor thereby admitted that his negligence was the cause of the patient's condition. On the fifth day following the operation the doctor stated to the plaintiff that he was waiting for a different medicine "from New York or some place"; and a companion of the plaintiff

suggested that a specialist be seen.   The doctor said that it seemed to him that he could not do anything better than he had been doing, and gave the plaintiff a letter addressed to a doctor at a hospital where the plaintiff then went.   In all this there could not be found to be an admission of negligence.

The question here presented is whether a jury would have been warranted by reasonable inference in concluding that negligence of the doctor in putting the drops in the plaintiff's eye was the cause of the conditions which appeared after the operation.   The permissible drawing of an inference by a jury is a process of reasoning whereby from facts admitted or established by the evidence, including expert testimony, or from common knowledge and experience, a reasonable conclusion may be drawn that a further fact is established. There was here no expert evidence other than what appears in the hospital report.   The mere fact that pain, inflammation and an ulcer in the plaintiff's eye followed the operation did not justify the inference of want of proper care and skill on the part of the doctor or warrant the conclusion that those conditions were the result of the doctor's negligence.   *King* v. *Belmore*, 248 Mass. 108, 114. *Boston* v. *Fountain*, 267 Mass. 196, 202.   There was no evidence tending to show the source or constituent elements of the liquid put in the plaintiff's eye, the purposes for which it is commonly used, its ordinary effects and characteristics or that it was or was not in general use by doctors following or in connection with such operations upon eyelids.   The mere fact that an unidentified liquid placed in an organ as sensitive as an eye was followed by pain and inflammation would not without other evidence warrant the inference by a jury that its use was improper. There was no evidence as to the character or extent of injury which might cause an ulcer in an eye or as to the ordinary origin, characteristics and development of such ulcers or as to the causes which are commonly adequate to produce them.   We are of the opinion that the record lacks elements which are essential before a reasonable inference can be drawn that negligence of the doctor caused the conditions appearing in the plaintiff's eye after the

operation and that the common experience and knowledge of a jury of laymen cannot supply the lack.   In deficiency in essential evidence to justify the necessary finding of causal connection this case resembles *Cross* v. *Albee*, 250 Mass. 170, 173; *Sheehan* v. *Strong*, 257 Mass. 525, 528; *Mason* v. *Geddes*, 258 Mass. 40, and *Goode* v. *Lothrop*, 266 Mass. 518, 520.   The doctrine of *res ipsa loquitur* is not applicable where as here the common knowledge or experience of men is not extensive enough to permit it to be said that the plaintiff's condition would not have existed except for negligence of the person charged.   *Walker* v. *Benz Kid Co.* 279 Mass. 533, 538.   *Mahoney* v. *Harley Private Hospital, Inc.* 279 Mass. 96, 101.   *Guell* v. *Tenney,* 262 Mass. 54, 56.

*Exceptions overruled.*