Mary Jane CONNORS and David M. Bliss, Plaintiffs–Appellees,

v.

UNIVERSITY ASSOCIATES IN OBSTETRICS AND GYNECOLOGY, INC., Defendant–Appellant.

No. 1791, Docket 93–7116.

United States Court of Appeals, Second Circuit.

Argued June 23, 1993.

Decided Aug. 26, 1993.

124

Stephen G. Norten, Burlington, VT (John T. Sartore, Paul, Frank & Collins, of counsel), for defendant-appellant.

Richard E. Davis, Barre, VT, for plaintiffs-appellees.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant University Associates in Obstetrics and Gynecology, Inc. ("University Associates") appeals from a judgment of the United States District Court for the District of Vermont (Billings, *Judge*), following a jury verdict awarding plaintiffs-appellees

Mary Jane Connors and David M. Bliss (collectively "Connors") $800,000 in damages. The award was made in compensation for injuries suffered by Connors as a result of complications from surgery performed on her by physicians employed by University Associates.

Connors brought an action against University Associates for medical malpractice. In the first trial, the jury found for University Associates. Following the verdict, however, the district court granted a new trial to Connors, finding that it had incorrectly denied her request for an instruction on res ipsa loquitur. During the second trial, the jury was instructed on res ipsa and subsequently returned the verdict for Connors. University Associates now appeals, arguing that the grant of the new trial was error. We affirm.

## BACKGROUND

On October 28, 1986, plaintiff-appellee Mary Jane Connors had surgery performed, including a hysteroscopy and a laparoscopy, in order to assist her in her efforts to become pregnant. The surgery was performed by Dr. John Brumsted, who was assisted by two other physicians. All were employees of the defendant-appellant University Associates.

Within a few days after surgery, Connors began to experience severe pain in her left leg and hip. This pain continues today and has been accompanied by a permanent loss of function of the leg. Subsequently, Connors and her husband, plaintiff-appellee David M. Bliss, brought an action before the United States District Court for the District of Vermont (Billings, J.) against University Associates, alleging medical malpractice. At all relevant times, Connors and Bliss were citizens of the state of New York, while University Associates was incorporated in Vermont and maintained its principal place of business there. The case was heard under Vermont state law.

At trial, Connors attempted to show that the physicians performing the surgery had negligently employed an O'Connor–O'Sullivan self-retaining retractor during the operation. A retractor is a device that is inserted into an incision and keeps the operative area open while the surgeon is working. Connors alleged that the negligent use of the retractor had entrapped her lateral femoral cutaneous nerve ("LFCN"), damaging the nerve and causing her injury. Experts for both parties agreed that the standard of care in the use of the retractor dictated that, *inter alia,* the doctor ensure that the retractor blades are not impinging on various structures, and that the doctor check the blades during surgery to ensure that the retractor is not pressing on nerves or muscles.

Experts at trial disagreed, however, over whether Connors' injury could have occurred even if this standard of care had been followed. Connors' experts opined that the injury could not have occurred if not for the negligent use of the retractor, and reasoned that Dr. Brumsted and the other physicians had violated the standard of care in employing the retractor. Dr. Brumsted testified for the defense, stating that he could not recall if he used a self-retaining retractor in the operation but was sure that he would have followed proper procedures if he had. Other defense experts opined that Connors' injury was due to the fact that her LFCN was abnormally positioned, an anatomical rarity that the performing physicians could not have anticipated. These experts also testified that nerve injuries in operations of this type were sometimes unavoidable complications not attributable to negligence.

At the close of trial, Connors requested that the district court instruct the jury on res ipsa loquitur. Specifically, Connors requested that the jury be charged that it could infer negligence from the fact of her injury, since such an injury would not normally happen but for the physicians' negligence. The defendant-appellant objected to the charge, and the district court declined to give the instruction.

The jury returned a verdict for University Associates. Following the verdict, Connors moved for a new trial under Fed.R.Civ.P. 59, arguing principally that the district court erred in denying her request for a res ipsa loquitur charge. The district court, in a well reasoned opinion, granted the new trial motion, finding that it had incorrectly refused to

give the instruction at trial. *Connors v. University Associates in Obstetrics and Gynecology, Inc.*, 769 F.Supp. 578 (D.Vt.1991). The court first stated the applicable Vermont law on res ipsa loquitur, and determined that the Vermont Supreme Court would allow the res ipsa instruction in medical malpractice cases. The district court then considered whether the instruction could be applicable even where expert testimony for the plaintiff is given, reviewed the law of other jurisdictions, and concluded:

> In an appropriate case, expert testimony may be as probative of the existence of negligence as the common knowledge of lay persons. If such is the case, we see no basis for refusing to permit a jury to draw an inference of negligence from expert testimony. The fact that the negligence at issue may be more subtle or complex than leaving a sponge in the body should not be controlling if the overarching requirement of the doctrine—that there is a body of experience that teaches that the injury would not have happened without negligence—is satisfied.

*Id.* at 584–85.

Applying the law of res ipsa loquitur to Connors' case, the district court concluded that the evidence supported the issuance of a res ipsa instruction. Therefore, the court ruled that a new trial was necessary, and granted the Rule 59 motion.

At the second trial, both parties presented their cases in greater detail, employing more expert witnesses. Connors introduced more direct evidence of the injury to her LFCN, and additionally raised claims about the possibility of other injuries caused by negligence of the University Associates. At the close of the second trial, the district court, over University Associates' objection, issued the following instruction to the jury:

> In ordinary cases, the mere fact that an accident or injury happened does not furnish evidence that it was caused by any person's negligence. And the plaintiff must prove some negligent act or omission on the part of the defendant. This is the method of finding negligence that I have just described to you.

Nevertheless, I instruct you in this case that you may find the defendant, University Associates, negligent if you find that the plaintiff has proved each of the following elements by a preponderance of the evidence; first, that an injury to the plaintiff ... was proximately caused by the self-retaining retractor used during her surgery; that at the time of the accident or injury, the self-retaining retractor was under the exclusive control or management of Dr. John Brumsted and/or his surgical assistants, so that the defendant had superior means for determining the cause of the accident and injury; and, third, that in the normal course of events this type of injury would not have occurred without the negligence of the person having control and management of the self-retaining retractor.

I say that you may so find. You are not compelled to so find. You should consider all the facts and circumstances in evidence and also the defendant's explanation. You are reminded that the plaintiff has the burden of proving the defendant's negligence by a preponderance of the evidence.

At the close of the second trial, the jury returned a verdict for the plaintiffs in the amount of $800,000. University Associates moved for a new trial, arguing that the res ipsa instruction was error. That motion was denied.

University Associates now appeals the result of the second trial, arguing that the district court erred in instructing the jury on res ipsa loquitur where: (1) expert testimony on causation was given; and (2) Connors introduced direct evidence on the cause of the injury. The appeal brings up for review both the correctness of giving a res ipsa loquitur charge at the second trial and the order granting a new trial for lack of a res ipsa loquitur charge at the first trial.

For the reasons stated below, we affirm.

## DISCUSSION

### I. *Expert Testimony*

■ Under Vermont law, res ipsa loquitur is a form of circumstantial evidence that allows a jury to infer from the circumstances of

an injury that the defendant has been negligent. *See Cyr v. Green Mountain Power Corp.,* 145 Vt. 231, 485 A.2d 1265, 1268 (1984). The term "res ipsa loquitur," literally translated, is Latin for "the thing speaks for itself," and derives from the landmark English case *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng.Rep. 299 (1863) (allowing the inference of negligence where a barrel of flour rolled out of a warehouse window). The doctrine has traditionally been invoked in cases where the jury has a "basis of past experience which reasonably permits the conclusion that such events do not ordinarily occur unless someone has been negligent." Restatement (Second) of Torts, § 328D, comment c (1965).

■ Under Vermont law, there are four elements of res ipsa loquitur: (1) a legal duty of the defendant to exercise a certain degree of care; (2) control by the defendant; (3) causation; and (4) the requirement that the "event which brought on the plaintiff's harm is such that [it] would not ordinarily occur except for the want of requisite care on the part of the defendant as the person responsible for the injuring agency." *Cyr,* 485 A.2d at 1268. These elements roughly correspond to the Restatement formulation. *See* Restatement § 328D(1).

■ University Associates has not challenged the district court's ruling that Vermont law would allow a res ipsa instruction in medical malpractice cases generally. However, the defendants-appellees contend that res ipsa should not apply to medical malpractice cases in which expert testimony is presented. The basis for this contention is that res ipsa is a doctrine traditionally grounded on the theory that jurors share a common experience that allows them to make certain inferences of negligence. If expert testimony is needed to support the inference, then the inference does not come from common experience but from uncommon experience (i.e., specialized medical knowledge).

■ University Associates has raised an issue that has divided jurisdictions across the country. Unless a medical malpractice case is factually simple (i.e., leaving a sponge in the patient), jurors' common experience will not provide them with the requisite insight to determine whether certain injuries can only be the result of negligence. In such non-obvious cases, courts are presented with a choice of either allowing a res ipsa loquitur instruction and permitting the plaintiff to educate the jury through the use of experts, or of disallowing the application of res ipsa loquitur and leaving the plaintiff to demonstrate negligence solely through the opinions of experts.

Although no Vermont court has ruled on the issue, there is a clear split between states in their treatment of res ipsa loquitur charges in medical malpractice cases. Some states allow the plaintiff to come forward with expert testimony to support a res ipsa theory, while others preclude the use of a res ipsa instruction in non-obvious cases and permit its use only in cases where the plaintiff's injury is one that the average citizen can perceive to be a function of negligence based on everyday experience. States adopting the view that expert testimony necessarily precludes the res ipsa inference include: Florida, *see Anderson v. Gordon,* 334 So.2d 107, 109 (Fla.Dist.Ct.App.1976); Idaho, *see Le Pelley v. Grefenson,* 101 Idaho 422, 426, 614 P.2d 962, 966 (1980); Iowa, *see Forsmark v. State,* 349 N.W.2d 763, 769 (Iowa 1984); Maryland, *see Orkin v. Holy Cross Hosp. of Silver Spring, Inc.,* 318 Md. 429, 569 A.2d 207, 209 (1990); *Meda v. Brown,* 318 Md. 418, 569 A.2d 202, 205 (1990); Massachusetts, *see Semerjian v. Stetson,* 284 Mass. 510, 187 N.E. 829, 830–31 (1933); Minnesota, *see Todd v. Eitel Hospital,* 306 Minn. 254, 237 N.W.2d 357, 361–62 (1975); North Dakota, *see Wasem v. Laskowski,* 274 N.W.2d 219, 225 (N.D.1979); Tennessee, *see Perkins v. Park View Hosp.,* 61 Tenn.App. 458, 456 S.W.2d 276, 284–85 (1970); *Ward v. United States,* 838 F.2d 182, 188 (6th Cir.1988) (applying Tennessee law); and Texas, *see Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex. 1990); *Williford v. Banowsky,* 563 S.W.2d 702, 705–06 (Tex.Civ.App.1978). As the Maryland Court of Appeals stated in *Orkin:*

This is not an "obvious injury" case. Resolution of the issues of negligence and causation involved in a case of this kind necessarily requires knowledge of complicated matters, including human anatomy,

medical science, operative procedures, areas of patient responsibility, and standards of care. Complex issues of the type generated by a case of this kind should not be resolved by laymen without expert assistance. *Res ipsa loquitur* does not apply under these circumstances.

*Orkin,* 569 A.2d at 209.

We conclude, however, that the district court was correct in predicting that Vermont would permit a plaintiff to utilize expert testimony to "bridge the gap" between the jury's common knowledge and the uncommon knowledge of experts. The Restatement explicitly encourages the use of expert testimony in medical malpractice cases involving res ipsa loquitur:

> In the usual case the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows. It may, however, be supplied by the evidence of the parties; and expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the inference. Such testimony may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion.

Restatement, § 328D, comment d. Moreover, states have increasingly chosen to follow the modern trend in permitting expert testimony, including: California, *see Kerr v. Bock,* 5 Cal.3d 321, 95 Cal.Rptr. 788, 790, 486 P.2d 684, 686 (1971); *McKinney v. Nash,* 120 Cal.App.3d 428, 174 Cal.Rptr. 642, 645 (1981); *Mayers v. Litow,* 154 Cal.App.2d 413, 316 P.2d 351, 353 (1957); District of Columbia, *see Harris v. Cafritz Memorial Hosp.,* 364 A.2d 135, 137 (App.D.C.1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); Hawaii, *see Medina v. Figuered,* 3 Haw.App. 186, 647 P.2d 292, 294 (1982); Illinois, *see Walker v. Rumer,* 72 Ill.2d 495, 21 Ill.Dec. 362, 364, 381 N.E.2d 689, 691 (1978); Kansas, *see Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 795 P.2d 915, 935–36 (1990);

Louisiana, *see Cangelosi v. Our Lady of Lake Regional Medical Center,* 564 So.2d 654, 664–65 (La.1989); Michigan, *see Jones v. Porretta,* 428 Mich. 132, 405 N.W.2d 863, 873 (1987); New Jersey, *see Buckelew v. Grossbard,* 87 N.J. 512, 435 A.2d 1150, 1157–58 (1981); Ohio, *see Morgan v. Children's Hosp.,* 18 Ohio St.3d 185, 480 N.E.2d 464, 467 (1985); Pennsylvania, *see Sedlitsky v. Pareso,* 400 Pa.Super. 1, 582 A.2d 1314, 1316–17 (1990); Rhode Island, *see Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676, 691 (1972); South Dakota, *see Van Zee v. Sioux Valley Hosp.,* 315 N.W.2d 489, 492 (S.D.1982); Wisconsin, *see Hoven v. Kelble,* 79 Wis.2d 444, 256 N.W.2d 379, 383 (1977); and Washington, *see Pederson v. Dumouchel,* 72 Wash.2d 73, 431 P.2d 973, 979 (1967).

 The restrictive view of res ipsa loquitur, barring expert testimony, erroneously overstates the importance of the traditional "common knowledge" requirement. Whether the knowledge required to evaluate the likelihood of negligent conduct inferred from an accident comes from common or specialized knowledge, the key question is still whether that accident would normally occur in the ordinary course of events. As the district court stated:

> in this era of constantly developing medical science, cases in which injuries bespeak negligence to the average person occur less and less and complex cases predominate. If courts refuse to allow experts to testify to what is common knowledge within their fields, then they are not being responsive to new conditions nor are they keeping abreast of changes in society.

*Connors,* 769 F.Supp. at 585; *see also Walker v. Rumer,* 21 Ill.Dec. at 364, 381 N.E.2d at 691. Experts within a field share a common knowledge about whether a certain type of injury could only occur through negligence, just as average citizens can share a common knowledge about whether barrels of flour normally roll out of warehouse windows. *See Byrne v. Boadle,* 2 H. & C. 722, 159 Eng. Rep. 299 (1863). These experts can educate the jurors, essentially training them to be twelve new initiates into a different, higher level of common knowledge. The jurors can then determine for themselves whether the

expert opinion is credible, after also considering the defendant's experts' opinions that res ipsa does not apply. As a New Jersey state appellate court stated:

> Expert testimony to the effect that those in a specialized field of knowledge or experience consider a certain occurrence as indicative of the probable existence of negligence is at least as probative of the existence of such a probability as the "common knowledge" of lay persons.

*Buckelew*, 435 A.2d at 1158.

This is clearly the type of case in which expert testimony was appropriate and necessary. To find otherwise would place Connors in a "Catch–22," presenting her with a choice of either introducing expert testimony or foregoing a res ipsa instruction. By making do with only one or the other, however, Connors' ability to present her case would have been severely impaired. If the res ipsa instruction were to be given without the expert testimony, the jury would be given the opportunity to find the defendants negligent without proof, but the jury would lack the acumen to be able to determine whether the injury was truly the type that could not occur but for the defendant's negligence.

Alternatively, Connors could introduce the expert testimony but do without the res ipsa charge, as in the first trial. This would give the jurors the ability to evaluate the injury, but would not instruct them that they can make the leap to inferring negligence from the fact of the injury. Expert testimony in this case was not able to prove conclusively that negligence caused Connors' injury. Rather, Connors' experts opined that there was nothing unusual about Connor's anatomy, contrary to the defendant-appellant's suggestion, and that the injury could only have occurred if the doctors had negligently used the retractor. This does not, by itself, support a finding of negligence. A res ipsa instruction was needed to allow the jury to make the inference. The res ipsa loquitur instruction in this case was important guidance to the jurors, informing them that, if they credited the testimony of Connors' experts, they could infer that the physicians were negligent simply because the injury occurred.

█ A res ipsa loquitur instruction is given in order to allow a plaintiff with no ability to show actual negligence the opportunity to prove negligence through inference. It is especially necessary in medical malpractice cases, since the unconscious plaintiff is in no position to be able to testify about what happened to her in surgery. It would make little sense for a plaintiff to be denied the res ipsa instruction because expert testimony was needed to bridge the gap between the jury's common knowledge and the knowledge needed to evaluate the claim. Such a denial would take away the instruction from cases where it is needed most. Therefore, the district court's grant of the new trial, and issuance of a res ipsa loquitur instruction in the second trial, was appropriate.

## II. *Direct Evidence*

█ University Associates also argues that the district court erred in issuing a res ipsa loquitur instruction at the second trial because Connors effectively "proved herself out" of the instruction by offering direct proof of the cause of her injuries. The district court rejected this contention, on the basis that Connors had not presented direct proof on causation. The court stated that

> plaintiffs did not offer direct evidence, such that nothing was left to inference, that University Associates was negligent. Although the expert testimony, photographs of Ms. Connors' scar, and X-rays could lead to the inference that the operating physicians were negligent, no eyewitness testimony or other direct evidence of negligence was available. Consequently, we find that plaintiffs did not "prove themselves out of" the doctrine of res ipsa loquitur.

The district court's conclusion rests soundly on settled Vermont law. In *Humphrey v. Twin State Gas & Electric Co.*, 100 Vt. 414, 139 A. 440, 445 (1927), the Vermont Supreme Court stated that there was no merit in a defendant's "argument that by alleging specific acts of negligence and giving or offering evidence tending to support them a plaintiff forfeits his right to rely upon [res ipsa loquitur]." The Court clarified this statement in

1940, stating that a plaintiff can rely on res ipsa loquitur even if she introduces evidence of specific negligent acts, but that res ipsa is foreclosed if all the facts are disclosed and there is nothing left to inference. *See Blaisdell v. Blake*, 111 Vt. 123, 11 A.2d 215, 217 (1940). These holdings comport with the majority rule in most states that a plaintiff can couple a res ipsa argument with evidence of specific acts of negligence by the defendant. *See* Stuart M. Speiser, The Negligence Case: Res Ipsa Loquitur, § 5:19 (1st ed. 1972) (collecting cases).

Connors did introduce evidence in this case pointing to the negligence of University Associates. As the district court found, however, this evidence did not so clearly prove the source of her injury that it left nothing to inference. The res ipsa instruction was therefore appropriate and necessary.

## CONCLUSION

For these reasons, we affirm the judgment of the district court, upholding both the grant of the new trial after the first trial, and the issuance of a res ipsa loquitur instruction in the second trial.