NANCY EDWARDS *vs.* ARTHUR BOLAND.

No. 95-P-111.

Suffolk. February 14, 1996. - September 26, 1996.

Present: DREBEN, GILLERMAN, & GREENBERG, JJ.

*Negligence,* Medical malpractice, Res ipsa loquitur. *Medical Malpractice,* Expert opinion. *Evidence,* Expert opinion. *Practice, Civil,* Instructions to jury.

In a medical malpractice case, the plaintiff was entitled to an instruction on the application of the doctrine of res ipsa loquitur on the basis of the testimony of her expert witness; the judge's refusal to give such an instruction was, in the circumstances, error requiring a new trial. [377-380]

At the trial of a medical malpractice action, the judge did not err in excluding proffered testimony about an alleged "conspiracy of silence" among local physicians that required the plaintiff to obtain the services of a medical expert from out-of-State, where the evidence did not establish any such conspiracy, such evidence was not relevant, and where the witness was not competent to testify on the subject. [380-382]

CIVIL ACTION commenced in the Superior Court Department on September 17, 1990.

The case was tried before *Hiller B. Zobel,* J.

*John J. C. Herlihy (Karen M. Thursby* with him) for the plaintiff.

*Raymond J. Kenney, Jr.,* for the defendant.

DREBEN, J. In this medical malpractice case tried in the Superior Court, the jury found for the defendant surgeon. In her appeal, the plaintiff challenges the failure of the trial judge to instruct the jury on the doctrine sometimes referred to as res ipsa loquitur. The doctrine has been applied where the facts in a medical malpractice case are such that the jury from their common knowledge and experience may find, without knowing the exact cause of the accident, that the harm which befell the plaintiff was more likely due to the negligence of the defendant than to some other cause for

which the physician is not liable.[1] The primary question on this appeal is whether, contrary to the defendant's contention, the jury may reach the same conclusion where the inference is not based on the jurors' own common knowledge, but is based on expert medical testimony. The plaintiff also challenges the exclusion of evidence relating to a "conspiracy of silence" among Massachusetts physicians. We hold that the plaintiff was entitled to an instruction on res ipsa loquitur in this case, and, accordingly, remand the matter to the Superior Court for a new trial.

The relevant facts, briefly summarized, are that the plaintiff after a skiing accident had to undergo several operations on her knee. The one which caused the problem was performed by the defendant in February, 1990. The surgery was to replace a ligament in her leg and required the drilling of a hole through the tibia and femur bones. In the course of the surgery, the drill severed an artery and the tibial nerve. It was later discovered that the perineal nerve had also been injured, although it was not clear whether this was due to swelling or the various surgeries.

A vascular surgeon was able to repair the arterial problem, but despite surgery on the tibial nerve, the plaintiff at the time of trial had very little feeling or function in her leg and had to wear a brace.

There was conflicting expert testimony at trial as to whether the defendant's performance of the operation departed from acceptable orthopedic surgical practice. Dr. R. Norman Dunn, the plaintiff's expert, testified that it is necessary and mandatory that the nerve and artery be protected because of the severe, catastrophic consequences of cutting through them, and that there are "readily available and virtually foolproof [ways] of preventing that injury from taking place." He described the severing of the artery and nerve as an unacceptable risk, that is, "an event that would not take place without a departure from the normal standard of care on behalf of the surgeon or a member of the operating team."

The defendant argues that the factual predicate for an instruction on res ipsa loquitur does not exist. He points to

---

[1]See, e.g., *Malone* v. *Bianchi*, 318 Mass. 179 (1945) (after defendant extracted the plaintiff's teeth, a tooth was found in the plaintiff's bronchus); *Lipman* v. *Lustig*, 346 Mass. 182 (1963); *Regula* v. *Bettigole*, 12 Mass. App. Ct. 939 (1981).

certain testimony of Dr. Dunn elicited on cross-examination, which the defendant urges indicates that Dr. Dunn was not saying that in the circumstances of this case negligence on the part of the defendant can be inferred merely because the nerve and artery were severed. Our reading of the testimony, however, is that Dr. Dunn considered that the accident would not have happened in the absence of negligence on the part of the surgeon. Indeed, in his closing argument, the defendant's counsel admitted as much. He criticized the plaintiff's expert for not explaining the cause of the accident, arguing, "when you boil it down to its lowest common denominator, what Dr. Dunn really said to you, ladies and gentlemen, is, 'An injury occurred and therefore Dr. Boland is negligent.' He equates injury with negligence automatically."

The defendant also claims that the plaintiff did not sufficiently preserve her objection to the failure to give an instruction on res ipsa loquitur. The plaintiff requested such an instruction, but the judge considered the doctrine inappropriate in this case. He did not give the instruction, did not permit the plaintiff to argue the theory, and in fact, instructed the jury as follows: "A surgeon does not guarantee a result. So, the fact that there was an incident involving the vein and the nerve is not evidence of negligence by itself." At the end of the instructions, before the judge gave supplemental instructions, the plaintiff again objected to the failure to give the instruction. We consider the objection preserved. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 67 (1993). Since the judge was aware of the plaintiff's contention and her reasons, the voicing of an additional objection was unnecessary at the end of the supplemental instructions dealing with other matters.

1. *Res ipsa loquitur.* The doctrine known as res ipsa loquitur

> "permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff are sufficiently eliminated by the evidence. See Re-

statement (Second) of Torts § 328D(1)(a) (1965)[2] (other citations omitted). The jury must be able to find either by *expert evidence* or by their own common knowledge that the mere occurrence of the accident shows negligence as a cause."

*Enrich* v. *Windmere Corp.*, 416 Mass. 83, 88 (1993) (emphasis supplied).

In *Connors* v. *University Assocs. in Obstetrics & Gynecology, Inc.*, 4 F.3d 123, 127-128 (2d Cir. 1993), a case in which the court had to apply Vermont law, the court surveyed the authorities in various jurisdictions and concluded:

> "there is a clear split between states in their treatment of res ipsa loquitur charges in medical malpractice cases. Some states allow the plaintiff to come forward with expert testimony to support a res ipsa theory, while others preclude the use of a res ipsa instruction in non-obvious cases and permit its use only in cases where the plaintiff's injury is one that the average citizen can perceive to be a function of negligence based on everyday experience."

In predicting that Vermont would permit expert testimony, the court noted that this was the view of the Restatement (Second) of Torts and the position increasingly chosen by States. See the numerous authorities cited, *id.* at 128.

Although the court placed Massachusetts as a State following the restrictive view of res ipsa loquitur so as to bar expert testimony, see *id.* at 127, and cites *Semerjian* v. *Stetson*, 284 Mass. 510 (1933), in support of that proposition, the court

---

[2]Paragraph 1 of § 328D entitled "Res Ipsa Loquitur" provides:

> "(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

misread that case. The defendant also relies on *Semerjian* for the statement in his brief that in Massachusetts, "it is well-established that the doctrine of res ipsa loquitur does not apply in medical malpractice where the common knowledge or experience of the jury is not extensive enough to permit it to determine that plaintiff's condition would not exist except by negligence." The brief does not correctly state Massachusetts law.

The question in *Semerjian* was whether a jury would have been warranted in concluding that negligence of a doctor in putting drops in the plaintiff's eye was the cause of his difficulties. The court concluded that the trial judge properly directed a verdict for the defendant, saying: "The permissible drawing of an inference by a jury is a process of reasoning whereby from facts admitted or established by evidence, *including expert testimony*, or from common knowledge and experience, a reasonable conclusion may be drawn that a further fact is established. There was here no expert evidence other than what appears in the hospital report." *Id.* at 514 (emphasis supplied). "The mere fact that an unidentified liquid placed in . . . an eye was followed by pain and inflammation would not without other evidence warrant the inference . . . that its use was improper." *Ibid.* Since there was no expert, the court went on to say that the doctrine of res ipsa is not applicable "where as here the common knowledge or experience of men is not extensive enough to permit it to be said that the plaintiff's condition would not have existed except for negligence of the person charged." *Id.* at 515.

*Semerjian* is consistent with our cases in areas other than medical malpractice which permit application of the doctrine of res ipsa loquitur to allow the trier of fact, where warranted, to draw the inference "either from common knowledge or from *expert testimony* that the occurrence of the accident shows negligence as a cause" (emphasis supplied) (citations omitted). *Coyne* v. *John S. Tilly Co.*, 368 Mass. 230, 235 (1975). To the same effect are, e.g., *Roscigno* v. *Colonial Beacon Oil Co.*, 294 Mass. 234, 235 (1936); *Evangelio* v. *Metropolitan Bottling Co.*, 339 Mass. 177, 182 (1959); *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 231 (1963); *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 122-123 (1971); *Enrich* v. *Windmere Corp.*, 416 Mass. at 87, 88; *Calvanese* v. *W.W. Babcock Co.*, 10 Mass. App. Ct. 726, 732 (1980). We see no

reason why expert testimony may not afford a sufficient basis for the doctrine's application in medical malpractice cases. See Restatement (Second) of Torts § 328D comment d ("Such testimony may be essential to the plaintiff's case where, as for example, in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion").

In this case the jury could reasonably have found on the evidence that the plaintiff's nerve and artery would not have been severed if not for some negligence on the part of the defendant. See Restatement (Second) of Torts § 328D(1). There was testimony from Dr. Dunn, the plaintiff's expert, that such severance does not normally occur in the absence of negligence. As operating surgeon the defendant was in control of the procedure and other possible causes could be found to have been sufficiently eliminated, and the indicated negligence was within the scope of the defendant's duty to the plaintiff. As in *Calvanese* v. *W.W. Babcock Co.*, 10 Mass. App. Ct. at 735, in these circumstances it was error for the judge to refuse to instruct on the theory of res ipsa loquitur.[3] And, as in that case, we cannot say that the error was harmless. The plaintiff was entitled to go to the jury on alternative theories of liability. *Ibid.* Had they been properly instructed, they might have found the defendant negligent.

2. *"Conspiracy of silence."* Since the matter may come up at a new trial, we comment briefly on this issue. The plaintiff attempted to present expert testimony as to the extreme difficulty plaintiffs have in obtaining local qualified medical experts to testify on their behalf in medical malpractice cases. She also tried to make this point during closing argument. The trial judge sustained the defendant's objections to both the testimony and the argument. An offer of proof was made that Dr. Dunn would testify that "it is an extremely difficult situation in the medical profession for a doctor to be testifying against other doctors, and that's particularly true in the locale" where the defendant is practicing.

The plaintiff claims error in the exclusion of the evidence, particularly in view of the defendant's cross-examination

---

[3]The judge, of course did not have to use the term "res ipsa loquitur," a term which the Supreme Judicial Court has tended to avoid. See *Evangelio* v. *Metropolitan Bottling Co.*, 339 Mass. at 179; *Wilson* v. *Honeywell, Inc.*, 28 Mass. App. Ct. 298, 300 (1990), *S.C.*, 409 Mass. 803 (1991).

directed to depicting Dr. Dunn as a person who spends his time traveling the country testifying for plaintiffs for money rather than as a practicing physician. In *Trull* v. *Long*, 621 So. 2d 1278 (Ala. 1993), the Supreme Court of Alabama analyzed what has been referred to as a "conspiracy of silence" among physicians which makes it extremely difficult for plaintiffs in medical malpractice cases to obtain local qualified experts to testify on their behalf. The court noted, discussing numerous authorities, that while commentators have readily recognized the alleged conspiracy as fact, courts have been far more reluctant to do so. See *id.* at 1279-1280.

In this case, there was no error in excluding the evidence. The plaintiff has not presented either adequate evidence that an alleged "conspiracy of silence" exists or that, as a result, she has not been able to obtain an expert witness. See *Trull*, 621 So. 2d at 1282, holding that the record failed "to show that a proper predicate was laid for the admission of evidence relating to the alleged 'conspiracy of silence.' " See also *Ogletree* v. *Willis-Knighton Memorial Hosp.*, 530 So. 2d 1175, 1180 (La. Ct. App. 1988).[4] Her claim that each of the two doctors who repaired her severed artery and nerve would not testify as experts on her behalf did not establish that their declination was because of this reason, nor did it show that she was unable to get other local experts.

Moreover, since *Brune* v. *Belinkoff*, 354 Mass. 102, 108 (1968), abolished the locality rule — "time has come when the medical profession should no longer be Balkanized by the application of varying geographic standards in malpractice cases" — the relevance of any showing of a "conspiracy of silence" is questionable.

In addition, Dr. Dunn's knowledge of any "conspiracy of silence" would appear to be limited to the New Jersey area as that is where he practiced. See *Ogletree*, 530 So. 2d at 1180. Any conspiracy among Massachusetts doctors would appear to be "out of the realm of his personal experience," *ibid.*, and

---

[4]In *Ogletree*, the court pointed out that to offset the danger of a conspiracy and its adverse effects on plaintiffs, the Louisiana Supreme Court held that in a malpractice action against a medical specialist, the specialist's duty is not governed by the professional standard within a particular locality, but rather by a national standard. Massachusetts also has overruled the "locality" rule. *Brune* v. *Belinkoff*, 354 Mass. 102, 108 (1968).

would be based upon inadmissible hearsay. See *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 (1986). See also *Commonwealth* v. *Roman*, 414 Mass. 235, 238 (1993). In excluding the evidence, the judge did not abuse his "broad discretion with respect to the admission of expert testimony." *Commonwealth* v. *Ianello*, 401 Mass. 197, 200 (1987).

Because of our conclusion that there was error in the refusal to give an instruction on res ipsa loquitur, the matter is remanded to the Superior Court for a new trial.

*So ordered.*