MacDonald, J.
The Defendant’s motion is DENIED, and the Plaintiff s motion is ALLOWED (in part) for the following reasons.
1. This is a medical malpractice case arising from a laparoscopy and tubal ligation surgery performed by the Defendant in 1978. The Defendant is a medical doctor specializing in obstetrics and gynecology. The Defendant had treated the Plaintiff for the prior seven years. At the time of the surgery the Plaintiff had been suffering excessive menstrual bleeding and anemia, as well as chronic pain.
2. The Defendant had previously implanted two IUDs in the Plaintiff, and among the objects of the 1978 surgery, according to a hospital record generated at the time, was that “Patient has an IUD to be removed.” It is uncontested, however, that the Defendant failed to remove the IUD in the course of the surgery, i.e., that it was inadvertently left behind.
3. The Plaintiff believed that the IUD had been removed.
4. Thereafter, the Plaintiff continued to have chronic abdominal pain, prolonged menstrual periods and anemia. In August 1992 the Plaintiff sought treatment from Nancy Friedley, M.D., a primary care physician. An ultra-sound examination was made. The radiology report noted, “Endometrial stripe is prominent which most likely represents endometrial sluffing but it could also represent a foreign body or an IUD.” The concluding “Impression” of the report was the following;
Normal transabdominal sonographic exam of the pelvis, however, endometrial stripe is very prominent which most likely represents endometrial sluffing because today’s exam coincides with start of her menstrual period. Other considerations for this hyperechoic endometrial stripe would be a foreign body or an intrauterine device.
*224 5. The Plaintiff in her affidavit states that Dr. Friedley never showed her the report or otherwise related to her its contents as to the possibility of the source of her discomfort being an IUD. Her affidavit stated, “I have a specific memory that Dr. Friedley told me that the August 7, 1992 Ultra Sound showed a cyst which was the type that came went with menstrual periods without any mention of an IUD.” At the time and thereafter the Plaintiff continued to believe that her IUD had been removed by the Defendant in 1978.
6. On December 10, 1999, however, the Plaintiff was treated by a third doctor who administered further tests to determine the source of her continuing menstrual bleeding and discomfort. In the course of the examination, the IUD originally implanted by Defendant prior to 1978 was discovered and then removed.
7. The Plaintiff filed the current action on December 6, 2002.
8. The Defendant claims the complaint was out of time because the Plaintiffs 1992 ultrasound ought to have put her on notice that the IUD had not in fact been removed and that she should then have made the causal connection between her condition and the Defendant’s surgical procedure.
9. Both Plaintiff and Defendant cite Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990), as controlling authority with regard to the limitations issue. The Court agrees.
10. The Bowen Court held: “The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.” Id. at 207. “[U]nder Massachusetts law notice of likely cause is ordinarily enough to start the statute running. Thus on notice, the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim.” Id. at 208, quoting Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (IstCir. 1983).
11. The Defendant acknowledged that the Plaintiff had no actual knowledge of the 1992 radiology report with the IUD reference. The Defendant further acknowledged that no evidence had been developed in discovery suggesting that the Plaintiff was informed of a possible IUD link to her ongoing medical problems. Rather, the Defendant posits that the Plaintiff had an affirmative obligation personally to have obtained the report and then acted on its contents in spite of having no specific information as to its existence or contents.
12.1 disagree. The information that the Plaintiff was provided by her medical caregivers was not “reasonably likely to put the plaintiff on notice that [the Defendant] may have caused her injury." Bowen, supra at 207. Further, even if she had known about the radiology report’s contents in 1992, it concluded with the clinical “impression” that the source of the problem was “most likely . . . endometrial sluffing,” not a lingering IUD. The proposition that a lay person in the Plaintiffs position may not reasonably rely on her doctor’s diagnostic summary of clinical tests and instead is under a duty to personally obtain and review the texts of such reports finds no support in Bowen. Accordingly, I deny the Defendant’s motion for summary judgment.
13. As to the Plaintiffs motion for partial summary judgment, I deny it with respect to the causation element of her claim because the Defendant submitted an expert affidavit opining that the Plaintiffs medical issues of chronic pain, excessive bleeding and anemia were not caused by the IUD left behind. Thus, there is a continuing material issue of fact on that aspect of the Plaintiffs case.
14. However, I grant summary judgment against the Defendant with respect to so much of the negligence count as relates to the Defendant’s violation of his duty of care. This is an appropriate instance for the application of the doctrine of res ipsa loquitur. Edwards v. Boland, 41 Mass.App.Ct. 372, 377-80 (1996). Here, “the mere existence of the accident shows negligence as a cause.” Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993). Further, the Plaintiff submitted expert opinion that the Defendant’s failure to remove the IUD in the circumstances “deviated from (and fell below) the standard of care” in the medical profession at the time. More significantly for summary judgment purposes, the Defendant presented no expert evidence to contradict this conclusion. Accordingly, there is no material issue of fact as to the Defendant’s breach of his duty of care to the Plaintiff, and, I allow the Plaintiffs motion for summary judgment on that issue.