MacLeod-Mancuso, Bonnie H., J.
The plaintiff, Catherine Radford (“Radford") brought this medical malpractice action against the defendant, Margery Brenner, M.D. (“Dr. Brenner”) to recover damages for personal injuries she sustained during breast augmentation mammoplasty surgery. This matter is now before the court on Dr. Brenner’s Motion for Summary Judgment. For the reasons set forth below, summary judgment is ALLOWED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as established by the summary judgment record, are as follows.
On May 3, 2000, Radford underwent breast augmentation surgery at Newton-Wellesley Hospital in Wellesley. Defendant Dr. Brenner served as the anesthesiologist during the operation, which was performed by Dr. William B. Loverme, M.D. (“Dr. Loverme”). Nurses Amanda Schrock (“Schrock”), Constance Bouvier (“Bouvier”), Maryann Christopher (“Nurse Christopher”), and two surgical technicians were also present in the operating room at various times during the procedure.
During the course of the procedure, a Bair Hugger_ warming blanket was placed over Radford’s legs and lower torso to maintain her normal body temperature. The Bair Hugger_, used in many surgical procedures, is heated by a warming unit that blows warm air through a tube attached to the bottom of the blanket. Nothing in the record indicates who applied the blanket or removed it from Radford’s lower body. Further, the parties have not specifically identified the warming unit used in the surgery. The blanket was thrown away immediately following the surgery.
After Radford awoke from the surgery, she noticed that she had developed painful red welts on her thighs. Dr. Loverme testified that he had first believed that the markings were hives, but later told Radford in the recovery room that she might have been burned. Dr. Brenner recorded the appearance of hives in her anesthesia record and also noted her conversation with Radford about a possible allergy to Kefzol, an antibiotic used during the procedure.
A week after the surgery, Dr Loverme re-examined Radford. At that time, he diagnosed her with bum injuries to both anterior thighs. Dr. Loverme told Radford to keep the burns bandaged and prescribed *737 Bacitracin. Radford continued to see Dr. Loverme for follow-up visits between May of 2000 and June of 2001. Her last appointment with Dr. Loverme occurred on April 13, 2004. As a result of the bums, Radford has suffered permanent scarring and skin discoloration.
Prior to the procedure, Radford had no substantial medical history or previous problems with anesthesia. At the time of the surgery, she was taking Minocycline for acne and was smoking a pack of cigarettes a day. Radford had also visited tanning salons once a week for five years prior to the surgery.
Radford filed the current action on February 11, 2002.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Natl Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law, Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). In order to defeat the moving party’s motion, the party opposing the motion must then set forth specific facts that establish the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
Res Ipsa Loquitur
Radford relies solely on the doctrine of res ipsa loquitur to establish a prima facie case of negligence. The doctrine allows a trier of fact to infer negligence when the cause of the plaintiffs injury is unknown. Edwards v. Boland, 41 Mass.App.Ct. 375, 377 (1996). The trier of fact must find that the incident does not ordinarily occur in the absence of negligence, and that the plaintiff has sufficiently eliminated causes of her injury other than the defendant. Id. To succeed under the doctrine, the plaintiff must submit evidence sufficient for the jury to infer, on its own or with the aid of expert testimony, that “the mere occurrence of the accident shows negligence as a cause.” Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993).
Radford has put forth evidence to suggest that the warming blanket caused her bums. To successfully attribute her injuries to Dr. Brenner, however, Radford must show that the blanket was within Dr. Brenner’s exclusive and sole control during the surgery. See Wilson v. Honeywell, Inc., 409 Mass. 803, 805 (1991). I find that she has not met this burden.
The concept of control over an instrumentality is not an inflexible one. See id. at 806. Instead, “(a)bsent evidence of other factors, exclusive control may be inferred where a defendant is responsible for the proper use, inspection and maintenance of the instrumentality.” Id. The plaintiff, however, must still show that there is a “greater likelihood that his injury was caused by the defendant’s negligence than by some other cause.” Jankelle v. Bishop Indus., Inc., 354 Mass. 491, 494 (1968). This language contemplates something more than mere evidence of control; it requires the plaintiff to produce probable evidence that the defendant is wholly responsible for the injury. See Brady v. Great Atl. & Pac. Tea Co., 336 Mass. 386, 391 (1957) (“The extent of control is relevant in determining whether in the particular case negligence may reasonably be ascribed to the defendant rather than another”).
Radford asserts that Dr. Brenner negligently caused her injuries because Dr. Brenner maintained control of the blanket’s application during surgery. Radford points to the testimony of Dr. Loverme and Nurse Christopher, which asserts that during surgical procedures, the anesthesiologist on duty would routinely direct others’ use and placement of the warming blanket. She further asserts that subsequent to the May 3, 2000 surgery, Newton-Wellesley Hospital tested all warming units at the hospital and determined that they were functioning properly. Yet even if Dr. Brenner assumed total control over the blanket during the procedure, Radford has still failed to offer any evidence refuting Dr. Brenner’s argument that Radford’s medications and smoking habit increased her susceptibility to heat and likelihood of injury. In fact, Radford’s own witness, Dr. Loverme, testified that smoking may have made Radford more susceptible to heat than the average patient.[1] Radford has not convinced this court, therefore, that there is a greater likelihood that Dr. Brenner’s negligence, and not preexisting external conditions, caused her injury.
Even if I were to find that Radford has sufficiently eliminated all other possible causes of her injury, I do not think a jury could, on its own, make the logical leap necessary to infer that the accident would not have occurred if Dr. Brenner had used due care. In the absence of evidence of the blanket’s misuse, I do not find the present situation to be one that does not normally occur without negligence. See Semerjian v. Stetson, 284 Mass. 510, 514 (1933) (holding jury not warranted in inferring that a doctor’s use of drops was negligent). The Semerjian Court concluded:
The mere fact that an unidentified liquid placed in an organ as sensitive as an eye was followed by pain and inflammation would not without other evidence warrant the inference by a jury that its use was *738 improper. There was no evidence as to the character or extent of injury which might cause an ulcer in an eye or as to the ordinary origin, characteristics and development of such ulcers or as to the causes which are commonly adequate to produce them. We are of the opinion that the record lacks elements which are essential before a reasonable inference can be drawn that negligence of the doctor caused the conditions appearing in the plaintiffs eye after the operation and that the common experience and knowledge of a jury of laymen cannot supply the lack.
Id. at 514-15. Compare Regula v. Bettigole, 12 Mass.App.Ct. 939, 940 (1981) (noting evidence conclusively established that plaintiffs burn resulted from a metal plate improperly applied on patient’s skin). It does not necessarily follow that a burn caused by a warming blanket during surgery confirms a physician’s negligence. In the absence of concrete evidence that Dr. Brenner mishandled the blanket, the connection between Radford’s injuries and Dr. Brenner’s negligence is tenuous. The lack of such evidence is especially conspicuous where Dr. Allen, Dr. Brenner’s expert, testified that it is impossible for one to negligently use or apply a warming blanket.[2]
Radford cites a number of decisions from other jurisdictions, involving facts similar to the present case, where courts have permitted juries to infer that the patients’ injuries could only have resulted from negligence.[3] Massachusetts courts, however, have not stretched their interpretation of the doctrine this far. In the cases where they have permitted juries to infer negligence using res ipsa loquitur, expert testimony and other evidence have established a more definite connection between the defendant’s negligence and the plaintiffs resulting injuries.
In Edwards v. Boland, the Appeals Court held that the jury was entitled to an instruction on res ipsa loquitur because the jury could have inferred that the severing of an artery and tibial nerve during leg surgery was due to the surgeon’s negligence. 41 Mass.App.Ct. at 376-77. The plaintiffs expert had testified that severing of the artery and nerve during surgery is a breach of the accepted standard of care and does not ordinarily happen when a doctor exercises due care. Id. at 376. Further, the court noted that the surgeon admitted that the accident would not have happened in the absence of negligence. Id. at 377. Where the evidence conclusively established that the doctor had breached his duty of care, and where the plaintiff had sufficiently eliminated other causes of his injury, the court held that a jury could have reasonably found that the defendant’s negligence caused the incident. Id. at 380; see also Malone v. Bianchi, 318 Mass. 179, 182 (1945) (holding jury able to infer that a tooth lodged in plaintiffs throat after a dental extraction was the result of the dentist’s negligence); Drakes v. Tulloch, 220 Mass. 256, 258-59 (1915) (finding inference of negligence appropriate where the plaintiff contracted syphilis through dental instruments that a dentist admitted he had not sterilized).[4]
The evidence before this court is not as convincing. Radford has presented evidence from which a jury could find that Dr. Brenner monitored a warming blanket that caused her burns. Where Radford has offered no evidence that Dr. Brenner misused the blanket or deviated from the standard of care owed to her patients, however, any inference of Dr. Brenner’s negligence lacks the evidential support the Edwards Court found so persuasive. Further, in the absence of evidence conclusively eliminating other possible causes of her burns, Radford has not proven that her injuries would not have occurred but for Dr. Brenner’s negligence. Radford’s allegations of Dr. Brenner’s negligent conduct, therefore, do not “pass beyond the limits of conjecture.” See Traverse v. Wing, 256 Mass. 320, 322 (1926). I therefore find that because Radford may not use the doctrine of res ipsa loquitur to infer Dr. Brenner’s negligence, she is unable to prove an essential element of her case. Dr. Brenner, therefore, is entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is ORDERED that Dr. Brenner’s Motion for Summary Judgment be ALLOWED.

Radford argues that because her medical history was made available to Dr. Brenner prior to the procedure, Dr. Brenner knew or should have known of Radford’s increased susceptibility to injury and was therefore negligent in her use of the warming blanket. However, where Radford has not offered any evidence that Dr. Brenner has breached the applicable standard of care, and where she rests her claim solely on res ipsa loquitur grounds, I do not consider her argument.

I do not consider Dr. Allen qualified to make legal conclusions as to whether or not Dr. Brenner acted negligently. However, I accept his affidavit as it pertains to his knowledge of surgical procedures.

See, e.g., Baczuk v. Salt Lake Reg. Med. Ctr., 8 P.3d 1037, 1040 (Utah Ct.App. 2000) (allowing jury to infer physician’s negligent conduct caused burns on patient’s buttocks during finger surgery); Graham v. Thompson, 854 S.W.2d 797, 800 (Mo.Ct.App. 1993) (permitting inference of negligence where patient suffered burns on her calf following foot surgery); Fogal v. Genesee Hosp., 41 A.D.2d 468, 475 (N.Y.App.Div. 1973) (holding jury could infer that a physician’s negligence caused the amputation of a patient’s limbs due to frostbite he suffered during surgery).

The evidence in Locke v. Jones, a case before the Superior Court, established that a doctor had inadvertently failed to remove an IUD device from the plaintiffs body during surgery. Civil No. 022579B (Worcester Super.Ct. Mar. 23, 2005) (MacDonald, J.) [19 Mass. L. Rptr. 223]. Where the plaintiffs expert testified that a physician’s failure to remove an IUD device was a breach of his duty of care, and where the physician did not contradict this conclusion, the court held that application of res ipsa loquitur was appropriate and entered summary judgment against the defendant physician. Id.